**LEWIS BRISBOIS BISGAARD & SMITH LLP**
THOMAS E. MULVIHILL, SB# 129906
Email: Thomas.Mulvihill@lewisbribois.com
JULIAN J. PARDINI, SB# 133878
Email: Julian.Pardini@lewisbribois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Plaintiff ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation,<br><br>Plaintiff,<br><br>vs.<br><br>LORENZO MARQUEZ, an individual doing business as LM CONSTRUCTION, KAREN M. KING, DAMIAN LUTZ, ADAN CRUZ SANTOS, MARICELA SOLORIO HEREDIA, CONRAD S MARIS, ANH M. MARIS, PAUL MONTEMURRO, MARIA GUADALUPE OCHOA, BRANDON RAMOS ESTRADA, HERIBERTO RAMOS ESTRADA, LARRY EDWARD RODRIGUEZ JR., AGNES A. RODRIGUEZ, BRYCE G. ROSE, LESLEY C. ROSE, MARIA T. GUTIERREZ, JOSE L. GUTIERREZ, FRANCISCO J. GONZALEZ, MARIA GUADALUPE GONZALES, ARTURO ROCHA JR., GABRIEL SANCHEZ, MARIA PERLA-HERNANDEZ GUILLEN, RAYMUNDO MENDEZ, DOMINGO OSCAR GABRIEL, GUADALUPE YADHIRA VILLEGAS CRUZ, CIRILO MOLINA, and MARIA ISABEL MOLINA,<br><br>Defendants. | CASE NO.<br><br>**EXHIBITS A, B, AND C TO THE COMPLAINT FOR DECLARATORY RELIEF** |

LEWIS BRISBOIS BISGAARD & SMITH LLP ATTORNEYS AT LAW

# EXHIBIT A

This e-copy is the official court record (GC68150)

**HARTMANN & KANANEN**
Ronald A. Hartmann, Esq., SBN 115683
ConstructionDefects@Gmail.com
Kurt E. Kananen, Esq., SBN 156136
KurtKananen@SBCGlobal.net
5743 Corsa Avenue, Suite 119
Westlake Village, CA 91362
Telephone: 818-710-0151
Attorneys for Plaintiffs

FILED
Merced Superior Court
8/30/2019 12:44 PM
Clerk of the Superior Court
By: Melissa Chavez, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MERCED

KAREN M. KING; DAMIAN LUTZ; ADAN CRUZ SANTOS; MARICELA SOLORIO HEREDIA; CONRAD S. MARIS; ANH M. MARIS; PAUL MONTEMURRO; BRANDON RAMOS ESTRADA; HERIBERTO RAMOS ESTRADA; LARRY EDWARD RODRIGUEZ, JR.; AGNES A. RODRIGUEZ; BRYCE G. ROSE; LESLEY C. ROSE; MARIA T. GUTIERREZ; JOSE L. GUTIERREZ; FRANCISCO J. GONZALEZ; MARIA GUADALUPE GONZALEZ; ARTURO ROCHA, JR.; GABRIEL SANCHEZ; MARIA PERLA-HERNANDEZ GUILLEN; CIRILO MOLINA; MARIA ISABEL MOLINA; MANUEL LANDA ALCAREZ; DOMINGO OSCAR GABRIEL; GUADALUPE YADHIRA VILLEGAS CRUZ; MARIA GUADALUPE OCHOA, individually and on behalf of all persons similarly situated; RAYMUNDO MENDEZ, individually and on behalf of all persons similarly situated;

Plaintiffs,

v.

CASAS MODERNA, LLC; LORENZO HERNENDEZ MARQUEZ; LM CONSTRUCTION, LLC; LM CONSTRUCTION; RICHARD VINCENT SCAGLIOTTI; JAMES DAVID TALIAFERRO; TALIAFERRO & SCAGLIOTTI; and DOES 1 through 1,000, inclusive;

Defendants.

CASE NO. 19CV-03814

[CONSTRUCTION DEFECT]

CLASS ACTION COMPLAINT AND INDIVIDUAL ACTION COMPLAINT FOR:
(1) STRICT LIABILITY;
(2) NEGLIGENCE;
(3) NEGLIGENCE PER SE;
(4) BREACH OF EXPRESS WARRANTIES;
(5) BREACH OF IMPLIED WARRANTIES;
(6) BREACH OF CONTRACT;
(7) BREACH OF CONTRACT - THIRD PARTY BENEFICIARY;
(8) VIOLATION OF CIVIL CODE SECTION 896 ET SEQ. (SB-800).

REQUEST FOR JURY TRIAL

///

This e-copy is the official court record (GC68150)

Plaintiffs (hereinafter collectively referred to as "PLAINTIFFS") allege as follows:

1. Plaintiffs are now, and at all times relevant were the owners of the following single family homes and real property in the City of Dos Palos and/or Merced County, California (the Plaintiffs' homes, including the structures, real property, appurtenances, building components, finished components, completed products, systems therein shall hereinafter be referred to as the "PLAINTIFFS' HOMES") (the term "PLAINTIFFS' HOMES" includes all systems and completed products within the PLAINTIFFS' HOMES):

(1) Karen M. King
2017 Stocking Street
Dos Palos, CA 93620

(2) Damian Lutz
731 Wilkinson Court
Dos Palos, CA 93620

(3) Adan Cruz Santos and Maricela Solorio Heredia
733 Nidever Avenue
Dos Palos, CA 93620

(4) Conrad S. Maris and Anh M. Maris
2009 Stocking Street
Dos Palos, CA 93620

(5) Paul Montemurro
2289 Stocking Street
Dos Palos, CA 93620

(6) Maria Guadalupe Ochoa, aka Maria Guadalupe Ochoa-Contreras
741 Nidever Avenue
Dos Palos, CA 93620

(7) Brandon Ramos Estrada and Heriberto Ramos Estrada
725 Nidever Avenue
Dos Palos, CA 93620

(8) Larry Edward Rodriguez, Jr. and Agnes A. Rodriguez
740 Wilkinson Court
Dos Palos, CA 93620

(9) Bryce G. Rose and Lesley C. Rose
739 Wilkinson Court
Dos Palos, CA 93620

(10) Maria T. Gutierrez and Jose L. Gutierrez
2281 Stocking Street
Dos Palos, CA 93620

This e-copy is the official court record (GC68150)

(11) Francisco J. Gonzalez and Maria Guadalupe Gonzalez
713 Moore Court
Dos Palos, CA 93620-9564

(12) Arturo Rocha, Jr.
734 Eggleston Avenue
Dos Palos, CA 93620-9564

(13) Gabriel Sanchez and Maria Perla-Hernandez Guillen
2133 Stocking Street
Dos Palos, CA 93620-9564

(14) Raymundo Mendez
728 Crowe Court
Dos Palos, CA 93620

(15) Domingo Oscar Gabriel and Guadalupe Yadhira Villegas Cruz
709 Nidever
Dos Palos, CA 93620

(16) Cirilo Molina and Maria Isabel Molina
2141 Stocking Street
Dos Palos, CA 93620

2. **CLASS REPRESENTATIVE PLAINTIFFS.** The following Plaintiffs, individually and on behalf of all others similarly situated, shall be referred to as "CLASS REPRESENTATIVES", and their homes shall be referred to as "CLASS HOMES":

(1) Maria Guadalupe Ochoa, aka Maria Guadalupe Ochoa-Contreras is the owner of the property located at 741 Nidever Avenue, Dos Palos, CA 93620, and is a plaintiff individually and on behalf of all others similarly situated.

(2) Brandon Ramos Estrada and Heriberto Ramos Estrada are the owners of the property located at 725 Nidever Avenue, Dos Palos, CA 93620, and is a plaintiff individually and on behalf of all others similarly situated.

3. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that, at all times herein mentioned:

(A) Defendant CASAS MODERNA, LLC, is, and at all times relevant was, a California Limited Liability Company conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

This e-copy is the official court record (GC68150)

(B) Defendant LM CONSTRUCTION, LLC, is, and at all times relevant was, a California Limited Liability Company conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(C) Defendant LORENZO HERNENDEZ MARQUEZ is, and at all times relevant was: an individual; a California licensed contractor (California State Contractors License Board License Number 764250); an individual doing business as LM Construction; a member of defendant LM CONSTRUCTION, LLC; a managing member of defendant LM CONSTRUCTION, LLC; the Responsible Managing Officer of defendant LM Construction, LLC; an alter ego defendant LM CONSTRUCTION, LLC; and engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(D) Defendant LM CONSTRUCTION, form of entity unknown, is, and at all times relevant was: defendant LORENZO HERNDNDEZ MARQUEZ an individual doing business as LM CONSTRUCTION; an alter ego defendant LORENZO HERNDNDEZ MARQUEZ; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(E) Defendant RICHARD VINCENT SCAGLIOTTI is, and at all times relevant was: an individual; an individual doing business as defendant TALIAFERRO & SCAGLIOTTI; a general partner of defendant TALIAFERRO & SCAGLIOTTI; an alter ego defendant TALIAFERRO & SCAGLIOTTI; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, remodeling, and sales in Merced County, as well as other counties, in California.

This e-copy is the official court record (GC68150)

(F) Defendant JAMES DAVID TALIAFERRO is, and at all times relevant was: an individual; an individual doing business as defendant TALIAFERRO & SCAGLIOTTI; a California contractor, license number 338309; a general partner of defendant TALIAFERRO & SCAGLIOTTI; an alter ego defendant TALIAFERRO & SCAGLIOTTI; and engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(G) Defendant TALIAFERRO & SCAGLIOTTI is, and at all times relevant was: a general partnership; an alter ego defendants RICHARD VINCENT SCAGLIOTTI and/or JAMES DAVID TALIAFERRO; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

4. Defendants DOES 1 through 200, inclusive, whether individual, corporate, associate or otherwise, are sued by these fictitious names and whose true names and capacities and contribution to PLAINTIFFS' and the CLASS REPRESENTATIVES' injuries and damages, at this time, are unknown to PLAINTIFFS and the CLASS REPRESENTATIVES . PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that at all times herein mentioned each of the defendants sued herein as DOES 1 through 200 was the agent, servant, employee, or alter ego of his, her or its co-defendants, and in doing the things hereinafter mentioned was acting in the scope of his, her or its authority as such agent, servant, and employee, or alter ego of, and with the permission, consent and/or ratification of his, her or its co-defendants; and that each of said fictitiously named defendants, whether an individual, corporation, limited liability company, partnership, association, or otherwise, is in some way liable or responsible to the PLAINTIFFS and the CLASS REPRESENTATIVES on the facts hereinafter alleged, and proximately caused injuries and damages thereby as hereinafter alleged. At such time as defendants' true names become known to PLAINTIFFS, PLAINTIFFS and the CLASS REPRESENTATIVES will amend this Complaint to insert

This e-copy is the official court record (GC68150)

said true names and capacities.

5. The use of the term "defendants" or "Defendants" (singular or plural) in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the named defendants, but also all defendants designated as DOES 1 through 200, inclusive, as though the terms "defendant", "defendants", "Defendant" or "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally, including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 200, inclusive."

6. PLAINTIFFS and the CLASS REPRESENTATIVES have timely filed this action.

7. PLAINTIFFS and the CLASS REPRESENTATIVES have made warranty claims to the Defendants, and Defendants have made repairs to the PLAINTIFFS' homes, and have promised to make further repairs to the PLAINTIFFS' and the CLASS REPRESENTATIVES' homes, but have since stopped making repairs.

8. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among the Defendants, such that any individuality and separateness between and among the Defendants have ceased, and the Defendants are the alter ego, joint venture and or enterprise of each other.

9. Adherence to the fiction of the separate existence of the Defendants as entities distinct from each other, would permit an abuse of the corporate privilege and would promote injustice and sanction fraud.

10. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, mere shells and shams without capital, assets, stock, or stockholders, under-insured or un-insured. Defendants were conceived, intended and used by some or all of the other defendants identified herein, as devices to avoid individual liability and for the purpose of substituting financially insolvent business entities in the place of each other. At no time after defendants became incorporated was any

This e-copy is the official court record (GC68150)

stock authorized to be issued or issued, nor has any permit for issuance of stock been applied for with the Commissioner of Corporations.

11. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business to be done by the Defendants, and the risks of loss attendant thereon, their capitalization was illusionary and entirely inadequate.

12. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, controlled, dominated, and operated by the other Defendants, as his/her/it/their individual businesses and alter egos, placed and transferred the assets of the various businesses in their own names and/or the names of other Defendant businesses in order to evade payments of the obligations owed to creditors of the Defendants and used the corporate funds of the Defendants for their own purposes, transferred the existing liabilities of the Defendants to each other and manipulated the assets and liabilities of the Defendants so that assets and liabilities were concentrated in the Defendants at various times to evade creditors, and that the activities and business of the Defendants were carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceedings were maintained, failed to maintain offices or business locations or maintained a business location that was the same location as multiple other entities without transacting business therein, failed to maintain an arm's length relationship between and among each other, and / or entered into personal transactions with each other without the approval of other directors or shareholders.

13. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the development and construction of the works of improvement that are the subject of this lawsuit.

14. The PLAINTIFFS' HOMES suffer from defects, deficiencies, and performance failures.

///

This e-copy is the official court record (GC68150)

15. The PLAINTIFFS' HOMES suffer from defects, deficiencies, and performance failures that are the result of defendants' willful misconduct and / or fraudulent concealment.

16. The defects, deficiencies, and performance failures alleged in this action were not apparent by reasonable inspection of the PLAINTIFFS' HOMES.

17. The defects, deficiencies, and performance failures alleged in this action involve predominantly common questions of law or fact, and are typical of issues attributable to other residences designed, developed, built and / or sold by Defendants, including the PLAINTIFFS' HOMES.

**CLASS ACTION ALLEGATIONS - CLASS HOMES - COMMON CLASS DEFECTS, DEFICIENCIES, AND PERFORMANCE FAILURES**

18. Pursuant to California Code of Civil Procedure § 382, the CLASS REPRESENTATIVES bring this action individually and as a class action on behalf of all other similarly situated California citizens who own homes in the State of California that were developed, designed, constructed, marketed, and/or sold by DEFENDANTS with COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES as defined below, and who have not already released their claims against the Defendants regarding the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES. This class action lawsuit addresses the following common defects, deficiencies, and performance failures in the CLASS HOMES:

a. The pipes, joints, connectors, and valves connecting the CPVC domestic water carrying pipes to the pipes bringing cold water into the water heaters, and the pipes, joints, connectors, and valves exiting the water heaters carrying hot water from the water heater and connecting to the domestic water carrying CPVC pipes are corroding and deteriorating. This common class deficiency shall be referred to as "WATER HEATER WATER PIPES DEFICIENCY".

b. The gas lines feeding gas into the water heaters lack a sediment trap. This common class deficiency shall be referred to as "SEDIMENT TRAP DEFICIENCY".

This e-copy is the official court record (GC68150)

c. The water heaters lack a water heater drainage pan. This common class deficiency shall be referred to as "WATER HEATER DRAINAGE PAN DEFICIENCY".

19. The common class action defects, deficiencies, and performance failures in the CLASS HOMES shall occasionally be collectively referred to as "COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES".

20. PLAINTIFFS' Homes, the CLASS REPRESENTATIVES' homes, and the CLASS HOMES are located within the following two communities of homes in Dos Palos, California, 93620:

a. The subdivision of homes known as Mayoral Estates, Tract 04-02, in Dos Palos, Zip Code 93620, Madera County, California, and includes, but is not limited to, the following streets: Nidever Ave, Wilkinson Court, Stocking Street, Moore Court, Crowe Court, Eggleston Ave.

b. The subdivision of homes known as Tatum Ranch, Tract 0024024038, Tract 2003-01, in Dos Palos, Madera County, California, ZIP Code 93560, which includes, but is not limited to, the following streets: Aviator Avenue, Narbaitz Landing.

21. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the CLASS HOMES were developed, designed, constructed, marketed, and/or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

22. The CLASS REPRESENTATIVES bring this action, on behalf of themselves and all other California citizens similarly situated with similarly situated HOMES within the State of California, as a class action pursuant to California Code of Civil Procedure § 382. The class which The CLASS REPRESENTATIVES seek to represent is composed of and defined as follows:

All citizens of California who own CLASS HOMES located in California that were developed, designed, constructed, marketed, and / or sold by Defendants. Excluded from the class are owners of CLASS HOMES whose claims against Defendants regarding COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES were previously released. Also excluded from the class are CLASS HOMES owned by any of the Defendants, or any entity in which any

This e-copy is the official court record (GC68150)

Defendant has a controlling interest, and the legal representatives, successors, or assigns of any such excluded person or entity.

23. Each person or entity that comes within the above class definition is referred to throughout this complaint as a "PUTATIVE CLASS MEMBER," or collectively as the "PUTATIVE CLASS MEMBERS." Each home that comes within the above class definition is referred to in this Complaint as a "CLASS HOME," or collectively, including the CLASS REPRESENTATIVES' Homes, as "CLASS HOMES."

24. This action has been brought and may properly be maintained as a class action, pursuant to California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed class is numerous and ascertainable, and the common questions of law and fact predominate over any questions affecting solely individual members of the class.

25. The CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants developed, designed, constructed, manufactured, warranted, repaired, and/or sold the CLASS HOMES and/or the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

26. The CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants installed the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in at least 50 homes in California. Because the class consists of the owners of potentially 50 or more homes, the members of the class are so numerous that joinder of all members of the class is impractical. The disposition of the class members' rights with respect to the alleged defects, as described in this Complaint, is a benefit to all the parties and to the Court.

27. The CLASS REPRESENTATIVES' claims are typical of the claims of the CLASS MEMBERS. The CLASS REPRESENTATIVES own CLASS HOMES which were developed, designed, constructed, marketed, and / or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES . The CLASS REPRESENTATIVES seek to assert the claims as alleged in this Complaint that are typical of the claims that would be asserted by the CLASS MEMBERS.

This e-copy is the official court record (GC68150)

28. The CLASS REPRESENTATIVES homes and the CLASS HOMES suffer from the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

29. A well-defined community of interest exists in that common questions of law and fact exist as to the CLASS MEMBERS. Defendants designed, developed, constructed, manufactured, supplied, distributed, warranted, repaired, marketed, and/or sold the CLASS HOMES with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES . DEFENDANTS knew, or should have known, that the WATER HEATER WATER PIPES DEFICIENCY is inherently defective and substantially certain to malfunction during its useful life, causing damage and necessitating repairs to a home with the Water Heater WATER HEATER WATER PIPES DEFICIENCY. DEFENDANTS failed to disclose to CLASS REPRESENTATIVES and the CLASS MEMBERS that their HOMES contained COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES that were highly likely to cause damage as alleged herein. DEFENDANTS' conduct constituted willful misconduct and fraudulent concealment. The common questions of law and fact predominate over any questions affecting solely individual members of the class.

30. The CLASS REPRESENTATIVES have adequately and objectively defined the class so the Court will be able to use the class definition to determine the class membership. Defendants' records, as well as the records of the County Recorders, will reveal homes that were developed, designed, constructed, marketed, and / or sold by Defendants, and the Defendants' records or a brief inspection will show which CLASS HOMES have COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES. Therefore, the putative class is ascertainable.

31. The CLASS REPRESENTATIVES will fairly and adequately represent the interests of all PUTATIVE CLASS MEMBERS. The CLASS REPRESENTATIVES are California citizens and own homes located in California that were developed, designed, constructed, marketed, and/or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, and are adequate representatives of the PUTATIVE CLASS MEMBERS as they have no interests which are adverse to the interests of the PUTATIVE CLASS MEMBERS. The CLASS REPRESENTATIVES have retained attorneys that have substantial experience and success in the prosecution of complex

This e-copy is the official court record (GC68150)

defective product consumer protection class action litigation.

32. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Furthermore, given the potential for extraordinary expenses and burdens in conducting the discovery and presentation of evidence regarding the inherent defects in the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the burden of individual litigation would make it extremely difficult, if not impossible, for individual members of the class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by hundreds or thousands of individual CLASS MEMBERS would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of and potential harm to CLASS MEMBERS' rights and the disposition of their interests through actions to which they were not parties. Class Representatives know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

33. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, as alleged herein, have caused damage to the CLASS HOMES and arose out of, are attributable to, and are directly and proximately caused by deficiencies in the Defendants' development, design, specification, planning, supervision, construction, observation of construction, manufacture, materials selection, finished assemblies, and/or repairs of the CLASS HOMES water heater system.

/ / /

/ / /

This e-copy is the official court record (GC68150)

34. California Civil Code § 896, et seq., various building codes and local codes and ordinances, manufacturer installation requirements, and industry standards mandate certain minimum construction and performance standards for the residential water heater system, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES falls below the construction and performance standard.

35. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the Defendants knew or should have known of the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, as alleged herein, and therefore, Defendants had notice of the problems and deficiencies alleged in this Complaint. Defendants also had notice of the defects as a result of their role in the development and construction of the CLASS HOMES, as a result of their repairs to CLASS HOMES and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, and as a result of their role and activities in the building and construction industry. The CLASS REPRESENTATIVES and the CLASS MEMBERS have timely given Defendants notice of the alleged CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, and, to the extent notice has not been given, this Complaint shall serve as notice.

36. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the Defendants made representations and warranties, both express and implied, including advertising and marketing, regarding the quality of the PLAINTIFFS' HOMES and the CLASS HOMES, and all of their systems and component parts, including the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

37. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the DEFENDANTS' conduct, as alleged in this Complaint, was inequitable and amounts to willful misconduct and fraudulent concealment.

38. PLAINTIFFS and the CLASS REPRESENTATIVES gave and/or attempted to give defendants due and timely notice of the defects, deficiencies, and performance failures. In response to PLAINTIFFS' and the CLASS REPRESENTATIVES' notice of the defects, deficiencies, and performance failures, the Defendants on occasion make repairs to the PLAINTIFFS' HOMES and the

This e-copy is the official court record (GC68150)

CLASS HOMES. This Complaint shall serve as additional notice to Defendants of the problems at the PLAINTIFFS' HOMES and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

39. PLAINTIFFS and Class Representatives allege on information and belief that certain acts, omissions, events, transactions, and damage of which the PLAINTIFFS are currently unaware proximately caused the damages which the PLAINTIFFS seek to recover in this action. The PLAINTIFFS and Class Representatives will seek leave to amend this Complaint to allege such acts, omissions, events, transactions, and damage when they are ascertained, or will prove them at the time of trial.

40. PLAINTIFFS and the CLASS REPRESENTATIVES attempted to mediate the disputes that are the subject of this lawsuit. Before the lawsuit was filed, in an effort to engage in mediation, PLAINTIFFS and Defendants negotiated and agreed to the appointment of a special master to govern the mediation and the litigation. The agreed upon Special Master is Robert L. Friedenberg, Esq. In conferences with the Special Master, the parties, through their attorneys, and the Special Master discussed the viability of meaningful pre-lawsuit mediation, and the parties and the Special Master agreed that the best way to engage in meaningful mediation would be to file the lawsuit and bring all necessary parties to the negotiating table. As a result of these discussions, the parties stipulated to allow a lawsuit to be filed without any party waiving its rights to recover attorney fees under the purchase and sale agreements with the PLAINTIFFS.

**FIRST CAUSE OF ACTION**

**(Strict Liability)**

**(Against All Defendants)**

41. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

42. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants at all times relevant were engaged in the business of residential real estate development and the mass production and sale to the public of residential dwellings, including single family homes, and including but not limited to the homes owned by PLAINTIFFS.

This e-copy is the official court record (GC68150)

43. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants at all times relevant participated in the development, design, construction, production, manufacture, distribution, supply, and sale to the public of mass produced single family homes, including but not limited to the homes owned by PLAINTIFFS.

44. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that at all times relevant Defendants knew that the mass produced homes, including but not limited to the homes owned by PLAINTIFFS and the CLASS REPRESENTATIVES, would be sold to and be used by members of the general public for the purpose of residences, without further inspection for defects.

45. PLAINTIFFS and the CLASS REPRESENTATIVES are lay persons and lack the knowledge and understanding to inspect the PLAINTIFFS' HOMES, and to understand whether or not the PLAINTIFFS' HOMES had any deficiencies or defects before purchase and thereafter. PLAINTIFFS and the CLASS REPRESENTATIVES lacked the ability to test the PLAINTIFFS' HOMES and the CLASS HOMES before purchase, to know whether defects existed at the time they purchased the PLAINTIFFS' HOMES and the CLASS HOMES.

46. DEFENDANTS owed PLAINTIFFS, the CLASS REPRESENTATIVES, and the PUTATIVE CLASS MEMBERS non-delegable duties to supervise the construction of the PLAINTIFFS' HOMES and the CLASS HOMES, including work performed by designers, architects, contractors, subcontractors, material men, suppliers, and distributors. DEFENDANTS were in full control of the construction and knew or should have known of the existence of the defects, latent defects, deficiencies, performance failures and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

47. At the time the PLAINTIFFS' HOMES and the CLASS HOMES left defendants' custody, control or possession, they suffered from defects, latent defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES which have resulted in foreseeable damage to the PLAINTIFFS' HOMES, as alleged in this Complaint, and the CLASS HOMES.

///

This e-copy is the official court record (GC68150)

48. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, in the PLAINTIFFS' HOMES and the CLASS HOMES are common to the PLAINTIFFS' HOMES and the CLASS HOMES.

49. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the PLAINTIFFS' HOMES and the CLASS HOMES, are causing consequential damage.

50. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES were designed and built with defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES such that the PLAINTIFFS' HOMES and the CLASS HOMES and the systems and products and components therein contain inherent defects which are substantially certain to result in malfunction during the useful life of the affected systems, products, and components.

51. Defendants are strictly liable and responsible to PLAINTIFFS and the CLASS REPRESENTATIVES for all damages suffered as a result of the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the PLAINTIFFS' HOMES and the CLASS HOMES.

52. The design and construction of the PLAINTIFFS' HOMES and the CLASS HOMES was deficient and defective, and the PLAINTIFFS' HOMES and the CLASS HOMES fail to meet the reasonable consumer expectations.

53. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES may be additionally deficient and defective and failing to perform in ways and to an extent not precisely known, but which will be established at the time of trial, according to proof.

54. PLAINTIFFS and the CLASS REPRESENTATIVES are not fully aware of all of the deficient and defective construction and the causes of the defective and deficient construction, as

This e-copy is the official court record (GC68150)

well as the full extent and possible legal significance of the results or causes of the conditions alleged in this Complaint, due to the conditions, failures and/or damage being continual and latent in nature.

55. As a direct and proximate result of Defendants' conduct and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the CLASS REPRESENTATIVES, the CLASS HOMES, and the PUTATIVE CLASS MEMBERS have been damaged in the following ways;

56. As a direct and proximate result of Defendants' conduct, the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the PLAINTIFFS, the CLASS REPRESENTATIVES, the CLASS HOMES, and the PUTATIVE CLASS MEMBERS have been damaged they will be required to perform works of repair, restoration, and construction to the PLAINTIFFS' HOMES and the CLASS HOMES, to prevent further damages and to restore the PLAINTIFFS' HOMES and the CLASS HOMES to their proper condition and to comply with the plans and specifications, the California building codes, local building codes, ordinances, and statutes (including but not limited to California Civil Code sections 895 et seq.), and manufacturer installation instructions. As a direct and proximate result of the defects, deficiencies, and performance failures in the PLAINTIFFS' HOMES and the CLASS HOMES, PLAINTIFFS and the CLASS REPRESENTATIVES and the PUTATIVE CLASS MEMBERS have suffered consequential damage that includes, but is not limited to:

A. Property damage, including but not limited damages to property other than the deficient, defective components, systems, and water heaters and components, damage to various areas, portions, systems, and/or components of the PLAINTIFFS' HOMES and the CLASS HOMES, personal property, the interior and exterior finishes; foundation; slab; driveway; stucco; lath; building paper; roof; roof components; structural elements; framing; drywall; insulation; windows; doors; paint; wall coverings; wall finishes; cabinets; floors; sub-floors; floor coverings; tiles, sheet vinyl; and other various components and systems of the PLAINTIFFS' HOMES and the CLASS HOMES.

///

This e-copy is the official court record (GC68150)

B. Property damage, including but not limited damages to corrosion of pipes, valves, connections, joints, fittings; pipe leaks; loss of function of the pipes; valves, connections, joints, fittings and the water heater; damage to property separate and apart from the water heaters, including but not limited to walls, wall coverings, ceilings, ceiling coverings, paint, drywall, framing members, insulation, personal property, and other building components and materials; violations of the building code, statutes, local ordinances, and manufacturer installation instructions.

C. Costs to repair and correct the various defects, deficiencies, and performance failures , and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, including access costs, tear out costs, and reinstallation costs

D. Costs to conform the PLAINTIFFS' HOMES and the CLASS HOMES and their various components and systems to the applicable building codes, statutes, local ordinances, manufacturer instructions.

E. Costs for consultant and expert investigation, redesign and reconstruction of the defects, deficiencies, and performance failures and the CLASS WATER HEATER SYSTEM DEFICIENCIES.

F. Diminution in value of the PLAINTIFFS' HOMES and the CLASS HOMES, including shortened life-span of various systems and components of the PLAINTIFFS' HOMES and the CLASS HOMES.

G. Loss of use, loss or diminished rental income, relocation costs and related costs when repairs are effectuated.

H. Damages for the reasonable value of repairing any violation of the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the PLAINTIFFS' HOMES and the CLASS HOMES to meet the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of removing and replacing any improper repair by the Defendants, reasonable relocation and storage expenses, lost business income if any of the PLAINTIFFS' HOMES and the CLASS HOMES were used as a principal

This e-copy is the official court record (GC68150)

place of a business licensed to be operated from the home, reasonable investigative costs for each established violation set forth in California Civil Code sections 895 through 945.5, and all other costs or fees recoverable by contract or statute.

I. Attorney fees pursuant to contract.

J. PLAINTIFFS and the CLASS MEMBERS have been forced to retain attorneys to prosecute this action against DEFENDANTS, which will result in a benefit to the CLASS MEMBERS and the general public. PLAINTIFFS and the CLASS MEMBERS are entitled to recover attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

K. Additional damages of which PLAINTIFFS and the CLASS REPRESENTATIVES are presently unaware, but which will be proven at the time of trial.

57. The amount of damage is precisely unknown, but is believed to be in excess of the minimum jurisdiction of this Court.

**SECOND CAUSE OF ACTION**

**(Negligence)**

**(Against All DEFENDANTS)**

58. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

59. Defendants were under a duty to exercise ordinary care or otherwise act to avoid reasonably foreseeable injury to users and purchasers of the PLAINTIFFS' HOMES and the CLASS HOMES, including PLAINTIFFS and the CLASS REPRESENTATIVES.

60. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants so carelessly and negligently developed, planned, designed, constructed, modified, inspected, manufactured, labeled, supplied, distributed, and / or performed work, repairs, and services at the PLAINTIFFS' HOMES and the CLASS HOMES that directly and proximately cause defects and damages to the PLAINTIFFS' HOMES and the CLASS HOMES, including but not limited to systems, components, buildings, and improvements as alleged in this complaint.

This e-copy is the official court record (GC68150)

61. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that defendants' conduct and the transactions at issue, as alleged in this Complaint, were intended to affect the class of people of whom PLAINTIFFS and the CLASS REPRESENTATIVES are members, namely, buyers of homes, including the PLAINTIFFS' HOMES and the CLASS HOMES.

62. Defendants knew or should have foreseen with reasonable certainty that purchasers and/or users of the PLAINTIFFS' HOMES and the CLASS HOMES would suffer the damages set forth herein if Defendants failed to perform their duty to cause the PLAINTIFFS' HOMES and the CLASS HOMES to be developed, designed, engineered, constructed, manufactured, labeled, in a proper and workmanlike manner and fashion.

63. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that as a direct and proximate result of the Defendants' carelessness and negligence, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**THIRD CAUSE OF ACTION**

**(Negligence Per Se)**

**(Against All DEFENDANTS)**

64. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

65. Pursuant to provisions of the then-applicable building codes and statutes, including but not limited to the California building code, California Civil Code sections 895, et seq., local building codes and ordinances, Defendants owed duties and non-delegable duties to develop, construct, plan, design, manufacture, label, and/or inspect the PLAINTIFFS' HOMES and the CLASS HOMES in accordance with the requirements of the building codes, statutes, ordinances.

///

///

This e-copy is the official court record (GC68150)

66. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants breached their duties by negligently developing, constructing, planning, designing, manufacturing, labeling, supplying, distributing and / or inspecting the PLAINTIFFS' HOMES and the CLASS HOMES.

67. As a direct and proximate result of the Defendants' negligence and failure to comply with building codes, statutes, and ordinances, the PLAINTIFFS' HOMES and the CLASS HOMES have various violations of building codes, statutes and ordinances.

68. PLAINTIFFS and the CLASS REPRESENTATIVES are members of the class of persons for whose protection the building codes, statutes, and ordinances were adopted.

69. By virtue of their violations of the applicable building codes, statutes and ordinances, the Defendants breached their respective duties of care to PLAINTIFFS and the CLASS REPRESENTATIVES.

70. As a direct and proximate result of the violations of building codes, statutes, and ordnances, PLAINTIFFS and the CLASS REPRESENTATIVES have suffered injuries of the types that the building codes, statutes anbd ordinances specifically were designed to prevent, including physical damage to PLAINTIFFS' HOMES and the CLASS HOMES and the various components and systems thereof, as well as personal property and other property.

71. As a direct and proximate result of the Defendants' conduct, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**FOURTH CAUSE OF ACTION**

**(Breach of Express Warranties)**

**(Against All DEFENDANTS)**

72. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

/ / /

This e-copy is the official court record (GC68150)

73. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants were mass producers and merchants of the PLAINTIFFS' HOMES and the CLASS HOMES, and, through sales brochures, advertising, marketing, written warranties, product samples, third party warranties, and through the contracts of sale and related sales warranty information, Defendants expressly warranted that, among other things, the PLAINTIFFS' HOMES and the CLASS HOMES were designed, constructed, manufactured and labeled in a commercially reasonable, workmanlike, and habitable manner, were constructed in substantial conformity with the approved plans and specifications and building codes, statutes and ordinances, were constructed according to manufacturer requirements, and were constructed in a good and workmanlike manner, when Defendants offered the PLAINTIFFS' HOMES and the CLASS HOMES for sale to the general public for use as residences.

74. Defendants knew that the PLAINTIFFS' HOMES and the CLASS HOMES were intended for ultimate sale to and use by the general public, including PLAINTIFFS and the CLASS REPRESENTATIVES, and PLAINTIFFS and the CLASS REPRESENTATIVES are the third party beneficiaries of any and all warranties Defendants received.

75. PLAINTIFFS and the CLASS REPRESENTATIVES relied on Defendants' express warranties and representations alleged in this Complaint.

76. Defendants breached the express warranties by developing, designing, constructing, manufacturing, labeling, and selling the PLAINTIFFS' HOMES and the CLASS HOMES with the alleged defects, deficiencies, and performance failures and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

77. As a direct and proximate result of the Defendants' breach of express warranties, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

///

This e-copy is the official court record (GC68150)

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranties)**

**(Against All DEFENDANTS)**

78. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

79. Defendants at all times herein mentioned, were and are merchants with respect to the PLAINTIFFS' HOMES and the CLASS HOMES, and Defendants impliedly warranted that the PLAINTIFFS' HOMES and the CLASS HOMES were of merchantable quality, were built in a reasonably workmanlike manner, and were fit for the specific use intended.

80. Defendants impliedly warranted that the PLAINTIFFS' HOMES and the CLASS HOMES were developed, designed, constructed, manufactured, labeled, distributed, supplied, placed into the stream of commerce, sold, and repaired in a commercially reasonable, habitable and workmanlike manner when Defendants offered the PLAINTIFFS' HOMES and the CLASS HOMES for sale as new construction for use as residences.

81. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES and the Defendants' repairs thereto were not of proper development, construction, design, manufacture, label, durability, reliability, and / or general quality and not fit for their intended use as herein alleged.

82. As a direct and proximate result of the Defendants' breach of implied warranties, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**SIXTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against All Defendants)**

83. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

This e-copy is the official court record (GC68150)

84. Defendants entered into real estate purchase and sale contracts with the PLAINTIFFS and the CLASS REPRESENTATIVES pursuant to which defendants, in exchange for the payment of money, agreed to provide PLAINTIFFS and the CLASS REPRESENTATIVES with the PLAINTIFFS' HOMES and the CLASS HOMES that were developed, designed, and constructed in a workmanlike manner, were developed, designed, and constructed in accordance with plans, specifications, building codes, ordinances, statutory standards, representations of quality, and manufacturer instructions.

85. PLAINTIFFS and the CLASS REPRESENTATIVES have performed all conditions, covenants, and promises required by the contracts in accordance with the terms and conditions of the contracts.

86. Defendants have breached the purchase and sales contracts as alleged herein by failing to provide the PLAINTIFFS' HOMES and the CLASS HOMES developed, designed, and constructed in a workmanlike manner as alleged in this Complaint, and by failing to provide homes developed, designed, and constructed in accordance with plans, specifications, building codes, ordinances, statutory standards, representations of quality, manufacturer instructions.

87. As a direct and proximate result of the Defendants' breaches of contract, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**SEVENTH CAUSE OF ACTION**

**(Breach of Contract - Third Party Beneficiary)**

**(Against Doe Defendants 1 through 100 Only)**

88. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

89. Defendants entered into contracts with various professionals, general contractors, subcontractors material suppliers, system builders, suppliers of completed products, and/or other suppliers for the development, design, construction, and inspection of the PLAINTIFFS' HOMES and

This e-copy is the official court record (GC68150)

the CLASS HOMES. The contracts were made for the benefit of the PLAINTIFFS and the CLASS REPRESENTATIVES in that Defendants knew that:

(A) The PLAINTIFFS' HOMES and the CLASS HOMES were designed, built, and intended for the benefit of sale to the public and a class of persons that includes the PLAINTIFFS and the CLASS REPRESENTATIVES;

(B) The professionals', general contractors', subcontractors', manufacturers, and suppliers' performances under the contracts were intended to develop, design, build and supply housing that complies with all applicable building codes, ordinances, statutory standards, representations of quality, the plans and specifications, applicable standards of care, applicable manufacturer installation instructions, and with the reasonable expectations of home buyers;

(C) The PLAINTIFFS' HOMES and the CLASS HOMES were designed and built to be used by the public, and not solely for the Defendants' own use;

(D) Harm to the PLAINTIFFS and the CLASS REPRESENTATIVES caused by the deficiencies alleged in this Complaint was foreseeable at the time the contracts were made;

(E) The PLAINTIFFS and the CLASS REPRESENTATIVES would in fact suffer harm caused by the deficiencies alleged in this Complaint;

(F) The professionals, general contractors, subcontractors', manufacturers' and suppliers' conduct would be directly connected to and cause the PLAINTIFFS and the CLASS REPRESENTATIVES to suffer harm as a result of the deficiencies alleged in this Complaint.

90. Defendants breached the contracts as alleged in this action.

91. All prior allegations of damage are incorporated herein by this reference.

92. As a direct and proximate result of the Defendants' breach of contracts, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

///

This e-copy is the official court record (GC68150)

**EIGHTH CAUSE OF ACTION**

**(Violation of Standards for Residential Construction California Civil Code § 895, et seq. )**

**(Against All Defendants)**

93. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

94. California Civil Code sections 895 et seq., establish mandatory standards regarding residential construction.

95. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants violated the standards regarding residential construction as set forth in California Civil Code sections 896 et seq. by providing, developing, constructing, planning, designing, manufacturing, labeling, supplying, distributing and /or inspecting the deficiencies and the damages thus caused by said deficiencies in the PLAINTIFFS' HOMES and the CLASS HOMES.

96. PLAINTIFFS and the CLASS REPRESENTATIVES are members of the class of persons for whose protection the building codes and statutes, including California Civil Code sections 895 et seq. were adopted.

97. As a direct and proximate result of Defendants' violation of California Civil Code sections 895 et seq., the PLAINTIFFS' HOMES and the CLASS HOMES, systems, and components contain various violations of building codes, statutes, ordinances, and manufacturer installation requirements.

98. By virtue of their violations of the applicable building codes and statutes, the Defendants violated California Civil Code sections 895 et seq.

99. As a direct and proximate result of building code, statutory, ordinance, manufacturer installation requirement violations, and the violations of California Civil Code sections 895 et seq., PLAINTIFFS and the CLASS REPRESENTATIVES have suffered damages and injuries alleged in this Complaint and incorporated herein, including damages for the reasonable value of repairing any violation of the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of repairing any damages caused by the repair efforts, the

This e-copy is the official court record (GC68150)

reasonable cost of repairing and rectifying any damages resulting from the failure of the PLAINTIFFS' HOMES and the CLASS HOMES to meet the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of removing and replacing any improper repair by the Defendants, reasonable relocation and storage expenses, lost business income if any of the PLAINTIFFS' HOMES and the CLASS HOMES were used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation set forth in California Civil Code sections 895 through 945.5, and all other costs or fees recoverable by contract or statute.

**WHEREFORE**, judgment is prayed for herein against Defendants as follows:

**ON ALL CAUSES OF ACTION**:

1. General and special damages according to proof at time of trial;
2. Reasonable fees of consultants, accountants and experts, and other disbursements;
3. Cost of suit incurred by PLAINTIFFS and the CLASS REPRESENTATIVES herein;
4. Attorney fees and costs of pursuant to contract;
5. Attorney fees and costs of suit pursuant to Code Civ. Proc. Section 1021.5; and
5. For such other and further relief as the Court may deem just and proper.

DATED: August 29, 2019

HARTMANN & KANANEN

/S/ *Ronald A. Hartmann*

By: RONALD A. HARTMANN
Attorneys for PLAINTIFFS and the CLASS REPRESENTATIVES

**REQUEST FOR JURY TRIAL**

PLAINTIFFS and the CLASS REPRESENTATIVES hereby request a jury trial in this action.

DATED: August 29, 2019

HARTMANN & KANANEN

/S/ *Ronald A. Hartmann*

By: RONALD A. HARTMANN
Attorneys for PLAINTIFFS and the CLASS REPRESENTATIVES

# EXHIBIT B

FILED
Merced Superior Court
9/26/2019 3:19 PM
Clerk of the Superior Court
By: Melissa Chavez, Deputy

This e-copy is the official court record (GC68150)

**HARTMANN & KANANEN**
Ronald A. Hartmann, Esq., SBN 115683
ConstructionDefects@Gmail.com
Kurt E. Kananen, Esq., SBN 156136
KurtKananen@SBCGlobal.net
5743 Corsa Avenue, Suite 119
Westlake Village, CA 91362
Telephone: 818-710-0151
Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF MERCED

| | |
|---|---|
| KAREN M. KING; DAMIAN LUTZ; ADAN CRUZ SANTOS; MARICELA SOLORIO HEREDIA; CONRAD S. MARIS; ANH M. MARIS; PAUL MONTEMURRO; BRANDON RAMOS ESTRADA; HERIBERTO RAMOS ESTRADA; LARRY EDWARD RODRIGUEZ, JR.; AGNES A. RODRIGUEZ; BRYCE G. ROSE; LESLEY C. ROSE; MARIA T. GUTIERREZ; JOSE L. GUTIERREZ; FRANCISCO J. GONZALEZ; MARIA GUADALUPE GONZALEZ; ARTURO ROCHA, JR.; GABRIEL SANCHEZ; MARIA PERLA-HERNANDEZ GUILLEN; CIRILO MOLINA; MARIA ISABEL MOLINA; MANUEL LANDA ALCAREZ; DOMINGO OSCAR GABRIEL; GUADALUPE YADHIRA VILLEGAS CRUZ; MARIA GUADALUPE OCHOA, individually and on behalf of all persons similarly situated; RAYMUNDO MENDEZ, individually and on behalf of all persons similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>CASAS MODERNA, LLC; LORENZO HERNENDEZ MARQUEZ; LM CONSTRUCTION, LLC; LM CONSTRUCTION; RICHARD VINCENT SCAGLIOTTI; JAMES DAVID TALIAFERRO; TALIAFERRO & SCAGLIOTTI; and DOES 1 through 1,000, inclusive;<br><br>Defendants. | **CASE NO. 19CV03814**<br>[CONSTRUCTION DEFECT]<br><br>ASSIGNED TO: HON. JUDGE BRIAN MCCABE<br>COURTROOM: 8<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND INDIVIDUAL ACTION COMPLAINT FOR:<br>(1) STRICT LIABILITY;<br>(2) NEGLIGENCE;<br>(3) NEGLIGENCE PER SE;<br>(4) BREACH OF EXPRESS WARRANTIES;<br>(5) BREACH OF IMPLIED WARRANTIES;<br>(6) BREACH OF CONTRACT;<br>(7) BREACH OF CONTRACT - THIRD PARTY BENEFICIARY;<br>(8) VIOLATION OF CIVIL CODE SECTION 896 ET SEQ. (SB-800).<br><br>REQUEST FOR JURY TRIAL |

///

This e-copy is the official court record (GC68150)

Plaintiffs (hereinafter collectively referred to as "PLAINTIFFS") allege as follows:

1. Plaintiffs are now, and at all times relevant were the owners of the following single family homes and real property in the City of Dos Palos and/or Merced County, California (the Plaintiffs' homes, including the structures, real property, appurtenances, building components, finished components, completed products, systems therein shall hereinafter be referred to as the "PLAINTIFFS' HOMES") (the term "PLAINTIFFS' HOMES" includes all systems and completed products within the PLAINTIFFS' HOMES):

(1) Karen M. King
2017 Stocking Street
Dos Palos, CA 93620

(2) Damian Lutz
731 Wilkinson Court
Dos Palos, CA 93620

(3) Adan Cruz Santos and Maricela Solorio Heredia
733 Nidever Avenue
Dos Palos, CA 93620

(4) Conrad S. Maris and Anh M. Maris
2009 Stocking Street
Dos Palos, CA 93620

(5) Paul Montemurro
2289 Stocking Street
Dos Palos, CA 93620

(6) Maria Guadalupe Ochoa, aka Maria Guadalupe Ochoa-Contreras
741 Nidever Avenue
Dos Palos, CA 93620

(7) Brandon Ramos Estrada and Heriberto Ramos Estrada
725 Nidever Avenue
Dos Palos, CA 93620

(8) Larry Edward Rodriguez, Jr. and Agnes A. Rodriguez
740 Wilkinson Court
Dos Palos, CA 93620

(9) Bryce G. Rose and Lesley C. Rose
739 Wilkinson Court
Dos Palos, CA 93620

(10) Maria T. Gutierrez and Jose L. Gutierrez
2281 Stocking Street
Dos Palos, CA 93620

This e-copy is the official court record (GC68150)

(11) Francisco J. Gonzalez and Maria Guadalupe Gonzalez
713 Moore Court
Dos Palos, CA 93620-9564

(12) Arturo Rocha, Jr.
734 Eggleston Avenue
Dos Palos, CA 93620-9564

(13) Gabriel Sanchez and Maria Perla-Hernandez Guillen
2133 Stocking Street
Dos Palos, CA 93620-9564

(14) Raymundo Mendez
728 Crowe Court
Dos Palos, CA 93620

(15) Domingo Oscar Gabriel and Guadalupe Yadhira Villegas Cruz
709 Nidever
Dos Palos, CA 93620

(16) Cirilo Molina and Maria Isabel Molina
2141 Stocking Street
Dos Palos, CA 93620

2. **CLASS REPRESENTATIVE PLAINTIFFS.** The following Plaintiffs, individually and on behalf of all others similarly situated, shall be referred to as "CLASS REPRESENTATIVES", and their homes shall be referred to as "CLASS HOMES":

(1) Maria Guadalupe Ochoa, aka Maria Guadalupe Ochoa-Contreras is the owner of the property located at 741 Nidever Avenue, Dos Palos, CA 93620, and is a plaintiff individually and on behalf of all others similarly situated.

(2) Brandon Ramos Estrada and Heriberto Ramos Estrada are the owners of the property located at 725 Nidever Avenue, Dos Palos, CA 93620, and is a plaintiff individually and on behalf of all others similarly situated.

3. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that, at all times herein mentioned:

(A) Defendant CASAS MODERNA, LLC, is, and at all times relevant was, a California Limited Liability Company conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

This e-copy is the official court record (GC68150)

(B) Defendant LM CONSTRUCTION, LLC, is, and at all times relevant was, a California Limited Liability Company conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(C) Defendant LORENZO HERNENDEZ MARQUEZ is, and at all times relevant was: an individual; a California licensed contractor (California State Contractors License Board License Number 764250); an individual doing business as LM Construction; a member of defendant LM CONSTRUCTION, LLC; a managing member of defendant LM CONSTRUCTION, LLC; the Responsible Managing Officer of defendant LM Construction, LLC; an alter ego defendant LM CONSTRUCTION, LLC; and engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(D) Defendant LM CONSTRUCTION, form of entity unknown, is, and at all times relevant was: defendant LORENZO HERNDNDEZ MARQUEZ an individual doing business as LM CONSTRUCTION; an alter ego defendant LORENZO HERNDNDEZ MARQUEZ; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(E) Defendant RICHARD VINCENT SCAGLIOTTI is, and at all times relevant was: an individual; an individual doing business as defendant TALIAFERRO & SCAGLIOTTI; a general partner of defendant TALIAFERRO & SCAGLIOTTI; an alter ego defendant TALIAFERRO & SCAGLIOTTI; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, remodeling, and sales in Merced County, as well as other counties, in California.

This e-copy is the official court record (GC68150)

(F) Defendant JAMES DAVID TALIAFERRO is, and at all times relevant was: an individual; an individual doing business as defendant TALIAFERRO & SCAGLIOTTI; a California contractor, license number 338309; a general partner of defendant TALIAFERRO & SCAGLIOTTI; an alter ego defendant TALIAFERRO & SCAGLIOTTI; and engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

(G) Defendant TALIAFERRO & SCAGLIOTTI is, and at all times relevant was: a general partnership; an alter ego defendants RICHARD VINCENT SCAGLIOTTI and/or JAMES DAVID TALIAFERRO; engaged in and doing business in Merced County, California, and other counties in California including but not limited to conducting the business of, among other things, residential and commercial real estate development, design, construction, and sales in Merced County, as well as other counties, in California.

4. Defendants DOES 1 through 200, inclusive, whether individual, corporate, associate or otherwise, are sued by these fictitious names and whose true names and capacities and contribution to PLAINTIFFS' and the CLASS REPRESENTATIVES' injuries and damages, at this time, are unknown to PLAINTIFFS and the CLASS REPRESENTATIVES . PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that at all times herein mentioned each of the defendants sued herein as DOES 1 through 200 was the agent, servant, employee, or alter ego of his, her or its co-defendants, and in doing the things hereinafter mentioned was acting in the scope of his, her or its authority as such agent, servant, and employee, or alter ego of, and with the permission, consent and/or ratification of his, her or its co-defendants; and that each of said fictitiously named defendants, whether an individual, corporation, limited liability company, partnership, association, or otherwise, is in some way liable or responsible to the PLAINTIFFS and the CLASS REPRESENTATIVES on the facts hereinafter alleged, and proximately caused injuries and damages thereby as hereinafter alleged. At such time as defendants' true names become known to PLAINTIFFS, PLAINTIFFS and the CLASS REPRESENTATIVES will amend this Complaint to insert

This e-copy is the official court record (GC68150)

said true names and capacities.

5. The use of the term "defendants" or "Defendants" (singular or plural) in any of the allegations in this Complaint, unless specifically alleged otherwise, is intended to include and charge, both jointly and severally, not only the named defendants, but also all defendants designated as DOES 1 through 200, inclusive, as though the terms "defendant", "defendants", "Defendant" or "Defendants" was followed in each and every instance throughout this Complaint with the phrase "and each of them jointly and severally, including all named Defendants and Defendants included herein and sued under the fictitious names of DOES 1 through 200, inclusive."

6. PLAINTIFFS and the CLASS REPRESENTATIVES have timely filed this action.

7. PLAINTIFFS and the CLASS REPRESENTATIVES have made warranty claims to the Defendants, and Defendants have made repairs to the PLAINTIFFS' homes, and have promised to make further repairs to the PLAINTIFFS' and the CLASS REPRESENTATIVES' homes, but have since stopped making repairs.

8. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that there exists, and at all times herein mentioned there existed, a unity of interest and ownership between and among the Defendants, such that any individuality and separateness between and among the Defendants have ceased, and the Defendants are the alter ego, joint venture and or enterprise of each other.

9. Adherence to the fiction of the separate existence of the Defendants as entities distinct from each other, would permit an abuse of the corporate privilege and would promote injustice and sanction fraud.

10. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, mere shells and shams without capital, assets, stock, or stockholders, under-insured or un-insured. Defendants were conceived, intended and used by some or all of the other defendants identified herein, as devices to avoid individual liability and for the purpose of substituting financially insolvent business entities in the place of each other. At no time after defendants became incorporated was any

This e-copy is the official court record (GC68150)

stock authorized to be issued or issued, nor has any permit for issuance of stock been applied for with the Commissioner of Corporations.

11. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, so inadequately capitalized that, compared with the business to be done by the Defendants, and the risks of loss attendant thereon, their capitalization was illusionary and entirely inadequate.

12. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants are, and at all times herein mentioned were, controlled, dominated, and operated by the other Defendants, as his/her/it/their individual businesses and alter egos, placed and transferred the assets of the various businesses in their own names and/or the names of other Defendant businesses in order to evade payments of the obligations owed to creditors of the Defendants and used the corporate funds of the Defendants for their own purposes, transferred the existing liabilities of the Defendants to each other and manipulated the assets and liabilities of the Defendants so that assets and liabilities were concentrated in the Defendants at various times to evade creditors, and that the activities and business of the Defendants were carried out without the holding of directors' or shareholders' meetings, no records or minutes of any corporate proceedings were maintained, failed to maintain offices or business locations or maintained a business location that was the same location as multiple other entities without transacting business therein, failed to maintain an arm's length relationship between and among each other, and / or entered into personal transactions with each other without the approval of other directors or shareholders.

13. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants have, and at all times herein mentioned had, a joint economic and business interest, goal and purpose in the development and construction of the works of improvement that are the subject of this lawsuit.

14. The PLAINTIFFS' HOMES suffer from defects, deficiencies, and performance failures.

///

This e-copy is the official court record (GC68150)

15. The PLAINTIFFS' HOMES suffer from defects, deficiencies, and performance failures that are the result of defendants' willful misconduct and / or fraudulent concealment.

16. The defects, deficiencies, and performance failures alleged in this action were not apparent by reasonable inspection of the PLAINTIFFS' HOMES.

17. The defects, deficiencies, and performance failures alleged in this action involve predominantly common questions of law or fact, and are typical of issues attributable to other residences designed, developed, built and / or sold by Defendants, including the PLAINTIFFS' HOMES.

**CLASS ACTION ALLEGATIONS - CLASS HOMES - COMMON CLASS DEFECTS, DEFICIENCIES, AND PERFORMANCE FAILURES**

18. Pursuant to California Code of Civil Procedure § 382, the CLASS REPRESENTATIVES bring this action individually and as a class action on behalf of all other similarly situated California citizens who own homes in the State of California that were developed, designed, constructed, marketed, and/or sold by DEFENDANTS with COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES as defined below, and who have not already released their claims against the Defendants regarding the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES. This class action lawsuit addresses the following common defects, deficiencies, and performance failures in the CLASS HOMES:

a. The pipes, joints, connectors, and valves connecting the CPVC domestic water carrying pipes to the pipes bringing cold water into the water heaters, and the pipes, joints, connectors, and valves exiting the water heaters carrying hot water from the water heater and connecting to the domestic water carrying CPVC pipes are corroding and deteriorating. This common class deficiency shall be referred to as "WATER HEATER WATER PIPES DEFICIENCY".

b. The gas lines feeding gas into the water heaters lack a sediment trap. This common class deficiency shall be referred to as "SEDIMENT TRAP DEFICIENCY".

This e-copy is the official court record (GC68150)

c. The water heaters lack a water heater drainage pan. This common class deficiency shall be referred to as "WATER HEATER DRAINAGE PAN DEFICIENCY".

19. The common class action defects, deficiencies, and performance failures in the CLASS HOMES shall occasionally be collectively referred to as "COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES".

20. PLAINTIFFS' Homes, the CLASS REPRESENTATIVES' homes, and the CLASS HOMES are located within the following two communities of homes in Dos Palos, California, 93620:

a. The subdivision of homes known as Mayoral Estates, Tract 04-02, in Dos Palos, Zip Code 93620, Madera County, California, and includes, but is not limited to, the following streets: Nidever Ave, Wilkinson Court, Stocking Street, Moore Court, Crowe Court, Eggleston Ave.

b. The subdivision of homes known as Tatum Ranch, Tract 0024024038, Tract 2003-01, in Dos Palos, Madera County, California, ZIP Code 93560, which includes, but is not limited to, the following streets: Aviator Avenue, Narbaitz Landing.

21. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the CLASS HOMES were developed, designed, constructed, marketed, and/or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

22. The CLASS REPRESENTATIVES bring this action, on behalf of themselves and all other California citizens similarly situated with similarly situated HOMES within the State of California, as a class action pursuant to California Code of Civil Procedure § 382. The class which The CLASS REPRESENTATIVES seek to represent is composed of and defined as follows:

All citizens of California who own CLASS HOMES located in California that were developed, designed, constructed, marketed, and / or sold by Defendants. Excluded from the class are owners of CLASS HOMES whose claims against Defendants regarding COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES were previously released. Also excluded from the class are CLASS HOMES owned by any of the Defendants, or any entity in which any

This e-copy is the official court record (GC68150)

Defendant has a controlling interest, and the legal representatives, successors, or assigns of any such excluded person or entity.

23. Each person or entity that comes within the above class definition is referred to throughout this complaint as a "PUTATIVE CLASS MEMBER," or collectively as the "PUTATIVE CLASS MEMBERS." Each home that comes within the above class definition is referred to in this Complaint as a "CLASS HOME," or collectively, including the CLASS REPRESENTATIVES' Homes, as "CLASS HOMES."

24. This action has been brought and may properly be maintained as a class action, pursuant to California Code of Civil Procedure § 382 because there is a well-defined community of interest in the litigation and the proposed class is numerous and ascertainable, and the common questions of law and fact predominate over any questions affecting solely individual members of the class.

25. The CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants developed, designed, constructed, manufactured, warranted, repaired, and/or sold the CLASS HOMES and/or the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

26. The CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants installed the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in at least 50 homes in California. Because the class consists of the owners of potentially 50 or more homes, the members of the class are so numerous that joinder of all members of the class is impractical. The disposition of the class members' rights with respect to the alleged defects, as described in this Complaint, is a benefit to all the parties and to the Court.

27. The CLASS REPRESENTATIVES' claims are typical of the claims of the CLASS MEMBERS. The CLASS REPRESENTATIVES own CLASS HOMES which were developed, designed, constructed, marketed, and / or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES . The CLASS REPRESENTATIVES seek to assert the claims as alleged in this Complaint that are typical of the claims that would be asserted by the CLASS MEMBERS.

This e-copy is the official court record (GC68150)

28. The CLASS REPRESENTATIVES homes and the CLASS HOMES suffer from the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

29. A well-defined community of interest exists in that common questions of law and fact exist as to the CLASS MEMBERS. Defendants designed, developed, constructed, manufactured, supplied, distributed, warranted, repaired, marketed, and/or sold the CLASS HOMES with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES . DEFENDANTS knew, or should have known, that the WATER HEATER WATER PIPES DEFICIENCY is inherently defective and substantially certain to malfunction during its useful life, causing damage and necessitating repairs to a home with the Water Heater WATER HEATER WATER PIPES DEFICIENCY. DEFENDANTS failed to disclose to CLASS REPRESENTATIVES and the CLASS MEMBERS that their HOMES contained COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES that were highly likely to cause damage as alleged herein. DEFENDANTS' conduct constituted willful misconduct and fraudulent concealment. The common questions of law and fact predominate over any questions affecting solely individual members of the class.

30. The CLASS REPRESENTATIVES have adequately and objectively defined the class so the Court will be able to use the class definition to determine the class membership. Defendants' records, as well as the records of the County Recorders, will reveal homes that were developed, designed, constructed, marketed, and / or sold by Defendants, and the Defendants' records or a brief inspection will show which CLASS HOMES have COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES. Therefore, the putative class is ascertainable.

31. The CLASS REPRESENTATIVES will fairly and adequately represent the interests of all PUTATIVE CLASS MEMBERS. The CLASS REPRESENTATIVES are California citizens and own homes located in California that were developed, designed, constructed, marketed, and/or sold by Defendants with originally installed COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, and are adequate representatives of the PUTATIVE CLASS MEMBERS as they have no interests which are adverse to the interests of the PUTATIVE CLASS MEMBERS. The CLASS REPRESENTATIVES have retained attorneys that have substantial experience and success in the prosecution of complex

This e-copy is the official court record (GC68150)

defective product consumer protection class action litigation.

32. A class action is superior to other available means for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds or thousands of individual lawsuits, will benefit the parties and greatly reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds or thousands of separate lawsuits. Furthermore, given the potential for extraordinary expenses and burdens in conducting the discovery and presentation of evidence regarding the inherent defects in the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the burden of individual litigation would make it extremely difficult, if not impossible, for individual members of the class to redress the wrongs asserted herein, while an important public interest will be served by addressing the matter as a class action. Moreover, separate prosecution by hundreds or thousands of individual CLASS MEMBERS would likely establish inconsistent standards of conduct for the Defendants and result in the impairment of and potential harm to CLASS MEMBERS' rights and the disposition of their interests through actions to which they were not parties. Class Representatives know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

33. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, as alleged herein, have caused damage to the CLASS HOMES and arose out of, are attributable to, and are directly and proximately caused by deficiencies in the Defendants' development, design, specification, planning, supervision, construction, observation of construction, manufacture, materials selection, finished assemblies, and/or repairs of the CLASS HOMES water heater system.

///

///

This e-copy is the official court record (GC68150)

34. California Civil Code § 896, et seq., various building codes and local codes and ordinances, manufacturer installation requirements, and industry standards mandate certain minimum construction and performance standards for the residential water heater system, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES falls below the construction and performance standard.

35. The CLASS REPRESENTATIVES are informed and believe and thereon allege that the Defendants knew or should have known of the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, as alleged herein, and therefore, Defendants had notice of the problems and deficiencies alleged in this Complaint. Defendants also had notice of the defects as a result of their role in the development and construction of the CLASS HOMES, as a result of their repairs to CLASS HOMES and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, and as a result of their role and activities in the building and construction industry. The CLASS REPRESENTATIVES and the CLASS MEMBERS have timely given Defendants notice of the alleged CLASS WATER HEATER SYSTEM DEFICIENCIES in the CLASS HOMES, and, to the extent notice has not been given, this Complaint shall serve as notice.

36. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the Defendants made representations and warranties, both express and implied, including advertising and marketing, regarding the quality of the PLAINTIFFS' HOMES and the CLASS HOMES, and all of their systems and component parts, including the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

37. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the DEFENDANTS' conduct, as alleged in this Complaint, was inequitable and amounts to willful misconduct and fraudulent concealment.

38. PLAINTIFFS and the CLASS REPRESENTATIVES gave and/or attempted to give defendants due and timely notice of the defects, deficiencies, and performance failures. In response to PLAINTIFFS' and the CLASS REPRESENTATIVES' notice of the defects, deficiencies, and performance failures, the Defendants on occasion make repairs to the PLAINTIFFS' HOMES and the

This e-copy is the official court record (GC68150)

CLASS HOMES. This Complaint shall serve as additional notice to Defendants of the problems at the PLAINTIFFS' HOMES and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

39. PLAINTIFFS and Class Representatives allege on information and belief that certain acts, omissions, events, transactions, and damage of which the PLAINTIFFS are currently unaware proximately caused the damages which the PLAINTIFFS seek to recover in this action. The PLAINTIFFS and Class Representatives will seek leave to amend this Complaint to allege such acts, omissions, events, transactions, and damage when they are ascertained, or will prove them at the time of trial.

40. PLAINTIFFS and the CLASS REPRESENTATIVES attempted to mediate the disputes that are the subject of this lawsuit. Before the lawsuit was filed, in an effort to engage in mediation, PLAINTIFFS and Defendants negotiated and agreed to the appointment of a special master to govern the mediation and the litigation. The agreed upon Special Master is Robert L. Friedenberg, Esq. In conferences with the Special Master, the parties, through their attorneys, and the Special Master discussed the viability of meaningful pre-lawsuit mediation, and the parties and the Special Master agreed that the best way to engage in meaningful mediation would be to file the lawsuit and bring all necessary parties to the negotiating table. As a result of these discussions, the parties stipulated to allow a lawsuit to be filed without any party waiving its rights to recover attorney fees under the purchase and sale agreements with the PLAINTIFFS.

**FIRST CAUSE OF ACTION**

**(Strict Liability)**

**(Against All Defendants)**

41. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

42. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants at all times relevant were engaged in the business of residential real estate development and the mass production and sale to the public of residential dwellings, including single family homes, and including but not limited to the homes owned by PLAINTIFFS.

This e-copy is the official court record (GC68150)

43. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants at all times relevant participated in the development, design, construction, production, manufacture, distribution, supply, and sale to the public of mass produced single family homes, including but not limited to the homes owned by PLAINTIFFS.

44. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that at all times relevant Defendants knew that the mass produced homes, including but not limited to the homes owned by PLAINTIFFS and the CLASS REPRESENTATIVES, would be sold to and be used by members of the general public for the purpose of residences, without further inspection for defects.

45. PLAINTIFFS and the CLASS REPRESENTATIVES are lay persons and lack the knowledge and understanding to inspect the PLAINTIFFS' HOMES, and to understand whether or not the PLAINTIFFS' HOMES had any deficiencies or defects before purchase and thereafter. PLAINTIFFS and the CLASS REPRESENTATIVES lacked the ability to test the PLAINTIFFS' HOMES and the CLASS HOMES before purchase, to know whether defects existed at the time they purchased the PLAINTIFFS' HOMES and the CLASS HOMES.

46. DEFENDANTS owed PLAINTIFFS, the CLASS REPRESENTATIVES, and the PUTATIVE CLASS MEMBERS non-delegable duties to supervise the construction of the PLAINTIFFS' HOMES and the CLASS HOMES, including work performed by designers, architects, contractors, subcontractors, material men, suppliers, and distributors. DEFENDANTS were in full control of the construction and knew or should have known of the existence of the defects, latent defects, deficiencies, performance failures and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

47. At the time the PLAINTIFFS' HOMES and the CLASS HOMES left defendants' custody, control or possession, they suffered from defects, latent defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES which have resulted in foreseeable damage to the PLAINTIFFS' HOMES, as alleged in this Complaint, and the CLASS HOMES.

///

This e-copy is the official court record (GC68150)

48. At the time PLAINTIFFS' purchased the PLAINTIFFS' HOMES, the PLAINTIFFS' HOMES were defective and unfit for their intended purposes because Defendants did not properly develop, design, and/or construct the PLAINTIFFS' HOMES, did not construct the PLAINTIFFS' HOMES in a workmanlike manner, and installed defective component parts and systems, as manifested by, but not limited to, numerous defects which have resulted in damage to the PLAINTIFFS' HOMES and their component parts and systems. The defects, faulty construction, deficient construction, deficient installation, and inadequate construction and design, include, without limitation and to various degrees on each of the PLAINTIFFS' HOMES respectively, the following:

a. Soil engineering and compaction, foundation design and construction, concrete slab, foundation, footings, driveway, concrete flatwork, concrete steps, including but not limited to cracks, separations, heaving, expansive soils, inadequate foundation.

b. Site drainage.

c. Perimeter wall and fence installation.

d. Window and sliding door flashing, framing, installation.

e. Roof flashing, framing, sheet metal, installation of roof components.

f. Stucco, including but not limited to installation, flashing, lath, plaster, plant-ons, weep screeds.

g. Rough Carpentry/framing, including but not limited to structural support, sheathing, nailing, shear transfer, draft stops, fire stops, rafter framing, uneven framing, shear panel and sill plate issues.

h. HVAC system and components, including but not limited to unsealed condenser unit, missing FAU unit heat shield, condensate drain system leaks, gas exhaust venting, and condensate drains missing trap.

///

This e-copy is the official court record (GC68150)

i. Plumbing system and components, including but not limited to dis-similar metals, toilet, sediment trap or drip leg on water heater gas line, missing water heater drip pan.

j. Interior and exterior doors, deadbolt screws and strike plate.

k. Ceramic floor tile, including but not limited to hollow tiles, cracked grout joints.

l. Interior and exterior primer and paint; unpainted tops, bottom and sides of doors.

m. Countertop construction, finish, installation.

n. Drywall installation.

o. Tub and shower walls, flashing, shower door, mixer valve, unprotected surfaces above tub.

p. DWV lines, dryer vent, water heater vent installation issues.

q. Doors - weather-stripping, sills, door shoes, and door frame.

r. Cabinet and finish carpentry installation.

s. Carpet installation issues.

t. Countertop backsplash installation.

u. Construction debris buried in yards.

v. Exterior openings not screened.

w. Electrical system, including, but not limited to, the junction box; exterior electrical fixtures; GFCI.

49. PLAINTIFFS' investigation of the defects, faulty construction, deficient construction, deficient installation, and inadequate construction and design is continuing and ongoing.

50. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, in the PLAINTIFFS' HOMES and the CLASS HOMES are common to

This e-copy is the official court record (GC68150)

the PLAINTIFFS' HOMES and the CLASS HOMES.

51. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the PLAINTIFFS' HOMES and the CLASS HOMES, are causing consequential damage.

52. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES were designed and built with defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES such that the PLAINTIFFS' HOMES and the CLASS HOMES and the systems and products and components therein contain inherent defects which are substantially certain to result in malfunction during the useful life of the affected systems, products, and components.

53. Defendants are strictly liable and responsible to PLAINTIFFS and the CLASS REPRESENTATIVES for all damages suffered as a result of the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES in the PLAINTIFFS' HOMES and the CLASS HOMES.

54. The design and construction of the PLAINTIFFS' HOMES and the CLASS HOMES was deficient and defective, and the PLAINTIFFS' HOMES and the CLASS HOMES fail to meet the reasonable consumer expectations.

55. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES may be additionally deficient and defective and failing to perform in ways and to an extent not precisely known, but which will be established at the time of trial, according to proof.

56. PLAINTIFFS and the CLASS REPRESENTATIVES are not fully aware of all of the deficient and defective construction and the causes of the defective and deficient construction, as well as the full extent and possible legal significance of the results or causes of the conditions alleged in this Complaint, due to the conditions, failures and/or damage being continual and latent in nature.

This e-copy is the official court record (GC68150)

57. As a direct and proximate result of Defendants' conduct and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the CLASS REPRESENTATIVES, the CLASS HOMES, and the PUTATIVE CLASS MEMBERS have been damaged in the following ways.

58. As a direct and proximate result of Defendants' conduct, the defects, deficiencies, and/or performance failures, and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES, the PLAINTIFFS, the CLASS REPRESENTATIVES, the CLASS HOMES, and the PUTATIVE CLASS MEMBERS have been damaged they will be required to perform works of repair, restoration, and construction to the PLAINTIFFS' HOMES and the CLASS HOMES, to prevent further damages and to restore the PLAINTIFFS' HOMES and the CLASS HOMES to their proper condition and to comply with the plans and specifications, the California building codes, local building codes, ordinances, and statutes (including but not limited to California Civil Code sections 895 et seq.), and manufacturer installation instructions.

59. As a direct and proximate result of the defects, deficiencies, and performance failures in the PLAINTIFFS' HOMES and the CLASS HOMES, PLAINTIFFS and the CLASS REPRESENTATIVES and the PUTATIVE CLASS MEMBERS have suffered consequential damage that includes, but is not limited to:

a. FOR ALL CLAIMS: Cracks in concrete foundations, slabs, flatwork, driveways, steps; water intrusion into the PLAINTIFFS' HOMES from various deficiencies, damaging paint, floor coverings, wall coverings, cabinets; overuse of electricity; shortened life of electrical appliances; improper venting of dangerous gases and exhaust and heat; corrosion and deterioration of metals; stucco cracks; drywall cracks; damage to wood materials; damage to and deterioration of paint, interior and exterior finishes, stucco, lath, building paper, roof components, roof tiles, roof building paper and flashing materials; framing components; window flashing components, structural and framing elements, drywall, insulation; water heaters and components, damage to pipes, valves, pipe joints, water heaters, gas lines, water heater

This e-copy is the official court record (GC68150)

framed base, drywall, paint; loss of use of the hot water system; and other various components and systems of the PLAINTIFFS' HOMES and the CLASS HOMES. PLAINTIFFS' investigation of consequential damages is ongoing.

b. CONSEQUENTIAL DAMAGES PARSED OUT OF THE ABOVE CONSEQUENTIAL DAMAGES FOR ALL CLAIMS, THAT ARE RELATED TO THE COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES: Property damage, including but not limited damages to property other than the deficient, defective components, systems, and water heaters and components, damage to pipes, valves, pipe joints, water heaters, gas lines, water heater framed base, drywall, paint; loss of use of the hot water system. PLAINTIFFS' investigation of consequential damages is ongoing.

c. FOR ALL CLAIMS: Costs to repair and correct the various defects, deficiencies, and performance failures, including access costs, tear out costs, and reinstallation costs.

d. FOR ALL CLAIMS: Costs to conform the homes and their various components and systems to the applicable building codes, statutes, local ordinances, manufacturer installation instructions.

e. FOR ALL CLAIMS: Costs for consultant and expert investigation, redesign and reconstruction of the defects, deficiencies, and performance failures.

f. FOR ALL CLAIMS: Diminution in value of the homes, including shortened life-span of various systems and components of the homes.

g. FOR ALL CLAIMS: Loss of use, loss or diminished rental income, relocation costs and related costs when repairs are effectuated.

h. FOR ALL CLAIMS: Damages for the reasonable value of repairing any violation of the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages

This e-copy is the official court record (GC68150)

resulting from the failure of the PLAINTIFFS' HOMES and the CLASS HOMES to meet the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of removing and replacing any improper repair by the Defendants, reasonable relocation and storage expenses, lost business income if any of the PLAINTIFFS' HOMES and the CLASS HOMES were used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation set forth in California Civil Code sections 895 through 945.5, and all other costs or fees recoverable by contract or statute.

i. FOR ALL CLAIMS: Attorney fees pursuant to contract.

60. PLAINTIFFS and the CLASS MEMBERS have been forced to retain attorneys to prosecute this action against DEFENDANTS, which will result in a benefit to the CLASS MEMBERS and the general public. PLAINTIFFS and the CLASS MEMBERS are entitled to recover attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

61. Additional damages of which PLAINTIFFS and the CLASS REPRESENTATIVES are presently unaware, but which will be proven at the time of trial.

62. The amount of damage is precisely unknown, but is believed to be in excess of the minimum jurisdiction of this Court.

**SECOND CAUSE OF ACTION**

**(Negligence)**

**(Against All DEFENDANTS)**

63. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

64. Defendants were under a duty to exercise ordinary care or otherwise act to avoid reasonably foreseeable injury to users and purchasers of the PLAINTIFFS' HOMES and the CLASS HOMES, including PLAINTIFFS and the CLASS REPRESENTATIVES.

///

This e-copy is the official court record (GC68150)

65. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants so carelessly and negligently developed, planned, designed, constructed, modified, inspected, manufactured, labeled, supplied, distributed, and / or performed work, repairs, and services at the PLAINTIFFS' HOMES and the CLASS HOMES that directly and proximately cause defects and damages to the PLAINTIFFS' HOMES and the CLASS HOMES, including but not limited to systems, components, buildings, and improvements as alleged in this complaint.

66. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that defendants' conduct and the transactions at issue, as alleged in this Complaint, were intended to affect the class of people of whom PLAINTIFFS and the CLASS REPRESENTATIVES are members, namely, buyers of homes, including the PLAINTIFFS' HOMES and the CLASS HOMES.

67. Defendants knew or should have foreseen with reasonable certainty that purchasers and/or users of the PLAINTIFFS' HOMES and the CLASS HOMES would suffer the damages set forth herein if Defendants failed to perform their duty to cause the PLAINTIFFS' HOMES and the CLASS HOMES to be developed, designed, engineered, constructed, manufactured, labeled, in a proper and workmanlike manner and fashion.

68. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that as a direct and proximate result of the Defendants' carelessness and negligence, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**THIRD CAUSE OF ACTION**

**(Negligence Per Se)**

**(Against All DEFENDANTS)**

69. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

///

This e-copy is the official court record (GC68150)

70. Pursuant to provisions of the then-applicable building codes and statutes, including but not limited to the California building code, California Civil Code sections 895, et seq., local building codes and ordinances, Defendants owed duties and non-delegable duties to develop, construct, plan, design, manufacture, label, and/or inspect the PLAINTIFFS' HOMES and the CLASS HOMES in accordance with the requirements of the building codes, statutes, ordinances.

71. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants breached their duties by negligently developing, constructing, planning, designing, manufacturing, labeling, supplying, distributing and / or inspecting the PLAINTIFFS' HOMES and the CLASS HOMES.

72. As a direct and proximate result of the Defendants' negligence and failure to comply with building codes, statutes, and ordinances, the PLAINTIFFS' HOMES and the CLASS HOMES have various violations of building codes, statutes and ordinances.

73. PLAINTIFFS and the CLASS REPRESENTATIVES are members of the class of persons for whose protection the building codes, statutes, and ordinances were adopted.

74. By virtue of their violations of the applicable building codes, statutes and ordinances, the Defendants breached their respective duties of care to PLAINTIFFS and the CLASS REPRESENTATIVES.

75. As a direct and proximate result of the violations of building codes, statutes, and ordnances, PLAINTIFFS and the CLASS REPRESENTATIVES have suffered injuries of the types that the building codes, statutes anbd ordinances specifically were designed to prevent, including physical damage to PLAINTIFFS' HOMES and the CLASS HOMES and the various components and systems thereof, as well as personal property and other property.

76. As a direct and proximate result of the Defendants' conduct, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

///

This e-copy is the official court record (GC68150)

**FOURTH CAUSE OF ACTION**

**(Breach of Express Warranties)**

**(Against All DEFENDANTS)**

77. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

78. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants were mass producers and merchants of the PLAINTIFFS' HOMES and the CLASS HOMES, and, through sales brochures, advertising, marketing, written warranties, product samples, third party warranties, and through the contracts of sale and related sales warranty information, Defendants expressly warranted that, among other things, the PLAINTIFFS' HOMES and the CLASS HOMES were designed, constructed, manufactured and labeled in a commercially reasonable, workmanlike, and habitable manner, were constructed in substantial conformity with the approved plans and specifications and building codes, statutes and ordinances, were constructed according to manufacturer requirements, and were constructed in a good and workmanlike manner, when Defendants offered the PLAINTIFFS' HOMES and the CLASS HOMES for sale to the general public for use as residences.

79. Defendants knew that the PLAINTIFFS' HOMES and the CLASS HOMES were intended for ultimate sale to and use by the general public, including PLAINTIFFS and the CLASS REPRESENTATIVES, and PLAINTIFFS and the CLASS REPRESENTATIVES are the third party beneficiaries of any and all warranties Defendants received.

80. PLAINTIFFS and the CLASS REPRESENTATIVES relied on Defendants' express warranties and representations alleged in this Complaint.

81. Defendants breached the express warranties by developing, designing, constructing, manufacturing, labeling, and selling the PLAINTIFFS' HOMES and the CLASS HOMES with the alleged defects, deficiencies, and performance failures and the COMMON CLASS WATER HEATER SYSTEM DEFICIENCIES.

///

This e-copy is the official court record (GC68150)

82. As a direct and proximate result of the Defendants' breach of express warranties, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranties)**

**(Against All DEFENDANTS)**

83. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

84. Defendants at all times herein mentioned, were and are merchants with respect to the PLAINTIFFS' HOMES and the CLASS HOMES, and Defendants impliedly warranted that the PLAINTIFFS' HOMES and the CLASS HOMES were of merchantable quality, were built in a reasonably workmanlike manner, and were fit for the specific use intended.

85. Defendants impliedly warranted that the PLAINTIFFS' HOMES and the CLASS HOMES were developed, designed, constructed, manufactured, labeled, distributed, supplied, placed into the stream of commerce, sold, and repaired in a commercially reasonable, habitable and workmanlike manner when Defendants offered the PLAINTIFFS' HOMES and the CLASS HOMES for sale as new construction for use as residences.

86. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that the PLAINTIFFS' HOMES and the CLASS HOMES and the Defendants' repairs thereto were not of proper development, construction, design, manufacture, label, durability, reliability, and / or general quality and not fit for their intended use as herein alleged.

87. As a direct and proximate result of the Defendants' breach of implied warranties, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

/ /

This e-copy is the official court record (GC68150)

**SIXTH CAUSE OF ACTION**

**(Breach of Contract)**

**(Against All Defendants)**

88. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

89. Defendants entered into real estate purchase and sale contracts with the PLAINTIFFS and the CLASS REPRESENTATIVES pursuant to which defendants, in exchange for the payment of money, agreed to provide PLAINTIFFS and the CLASS REPRESENTATIVES with the PLAINTIFFS' HOMES and the CLASS HOMES that were developed, designed, and constructed in a workmanlike manner, were developed, designed, and constructed in accordance with plans, specifications, building codes, ordinances, statutory standards, representations of quality, and manufacturer instructions.

90. PLAINTIFFS and the CLASS REPRESENTATIVES have performed all conditions, covenants, and promises required by the contracts in accordance with the terms and conditions of the contracts.

91. Defendants have breached the purchase and sales contracts as alleged herein by failing to provide the PLAINTIFFS' HOMES and the CLASS HOMES developed, designed, and constructed in a workmanlike manner as alleged in this Complaint, and by failing to provide homes developed, designed, and constructed in accordance with plans, specifications, building codes, ordinances, statutory standards, representations of quality, manufacturer instructions.

92. As a direct and proximate result of the Defendants' breaches of contract, PLAINTIFFS and the CLASS REPRESENTATIVES have been damaged as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

///

This e-copy is the official court record (GC68150)

**SEVENTH CAUSE OF ACTION**

**(Breach of Contract - Third Party Beneficiary)**

**(Against Doe Defendants 1 through 100 Only)**

93. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

94. Defendants entered into contracts with various professionals, general contractors, subcontractors material suppliers, system builders, suppliers of completed products, and/or other suppliers for the development, design, construction, and inspection of the PLAINTIFFS' HOMES and the CLASS HOMES. The contracts were made for the benefit of the PLAINTIFFS and the CLASS REPRESENTATIVES in that Defendants knew that:

(A) The PLAINTIFFS' HOMES and the CLASS HOMES were designed, built, and intended for the benefit of sale to the public and a class of persons that includes the PLAINTIFFS and the CLASS REPRESENTATIVES;

(B) The professionals', general contractors', subcontractors', manufacturers, and suppliers' performances under the contracts were intended to develop, design, build and supply housing that complies with all applicable building codes, ordinances, statutory standards, representations of quality, the plans and specifications, applicable standards of care, applicable manufacturer installation instructions, and with the reasonable expectations of home buyers;

(C) The PLAINTIFFS' HOMES and the CLASS HOMES were designed and built to be used by the public, and not solely for the Defendants' own use;

(D) Harm to the PLAINTIFFS and the CLASS REPRESENTATIVES caused by the deficiencies alleged in this Complaint was foreseeable at the time the contracts were made;

(E) The PLAINTIFFS and the CLASS REPRESENTATIVES would in fact suffer harm caused by the deficiencies alleged in this Complaint;

(F) The professionals, general contractors, subcontractors', manufacturers' and suppliers' conduct would be directly connected to and cause the PLAINTIFFS and the CLASS REPRESENTATIVES to suffer harm as a result of the deficiencies alleged in this Complaint.

This e-copy is the official court record (GC68150)

95. Defendants breached the contracts as alleged in this action.

96. All prior allegations of damage are incorporated herein by this reference.

97. As a direct and proximate result of the Defendants' breach of contracts, PLAINTIFFS and the CLASS REPRESENTATIVES suffered damages as alleged in this Complaint and incorporated herein, in an amount precisely unknown, but believed to be in excess of the minimum jurisdiction of this Court.

**EIGHTH CAUSE OF ACTION**

**(Violation of Standards for Residential Construction California Civil Code § 895, et seq. )**

**(Against All Defendants)**

98. PLAINTIFFS and the CLASS REPRESENTATIVES re-allege and incorporate by reference herein all prior paragraphs as though fully alleged herein.

99. California Civil Code sections 895 et seq., establish mandatory standards regarding residential construction.

100. PLAINTIFFS and the CLASS REPRESENTATIVES are informed and believe and thereon allege that Defendants violated the standards regarding residential construction as set forth in California Civil Code sections 896 et seq. by providing, developing, constructing, planning, designing, manufacturing, labeling, supplying, distributing and /or inspecting the deficiencies and the damages thus caused by said deficiencies in the PLAINTIFFS' HOMES and the CLASS HOMES.

101. PLAINTIFFS and the CLASS REPRESENTATIVES are members of the class of persons for whose protection the building codes and statutes, including California Civil Code sections 895 et seq. were adopted.

102. As a direct and proximate result of Defendants' violation of California Civil Code sections 895 et seq., the PLAINTIFFS' HOMES and the CLASS HOMES, systems, and components contain various violations of building codes, statutes, ordinances, and manufacturer installation requirements.

103. By virtue of their violations of the applicable building codes and statutes, the Defendants violated California Civil Code sections 895 et seq.

This e-copy is the official court record (GC68150)

104. As a direct and proximate result of building code, statutory, ordinance, manufacturer installation requirement violations, and the violations of California Civil Code sections 895 et seq., PLAINTIFFS and the CLASS REPRESENTATIVES have suffered damages and injuries alleged in this Complaint and incorporated herein, including damages for the reasonable value of repairing any violation of the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the PLAINTIFFS' HOMES and the CLASS HOMES to meet the standards set forth in California Civil Code sections 895 through 945.5, the reasonable cost of removing and replacing any improper repair by the Defendants, reasonable relocation and storage expenses, lost business income if any of the PLAINTIFFS' HOMES and the CLASS HOMES were used as a principal place of a business licensed to be operated from the home, reasonable investigative costs for each established violation set forth in California Civil Code sections 895 through 945.5, and all other costs or fees recoverable by contract or statute.

**WHEREFORE**, judgment is prayed for herein against Defendants as follows:

**ON ALL CAUSES OF ACTION**:

1. General and special damages according to proof at time of trial;
2. Reasonable fees of consultants, accountants and experts, and other disbursements;
3. Cost of suit incurred by PLAINTIFFS and the CLASS REPRESENTATIVES herein;
4. Attorney fees and costs of pursuant to contract;
5. Attorney fees and costs of suit pursuant to Code Civ. Proc. Section 1021.5; and
5. For such other and further relief as the Court may deem just and proper.

DATED: September 26, 2019

HARTMANN & KANANEN

/S/ Ronald A. Hartmann

By: RONALD A. HARTMANN
Attorneys for PLAINTIFFS and the CLASS REPRESENTATIVES

This e-copy is the official court record (GC68150)

**REQUEST FOR JURY TRIAL**

PLAINTIFFS and the CLASS REPRESENTATIVES hereby request a jury trial in this action.

DATED: September 26, 2019

HARTMANN & KANANEN

/S/ Ronald A. Hartmann

By: RONALD A. HARTMANN
Attorneys for PLAINTIFFS and the CLASS REPRESENTATIVES

# EXHIBIT C

ATAIN
220 Kaufman Financial Center
30833 Northwestern Highway
Farmington Hills, MI 48334
atainInsurance.com

State of Michigan
County of Oakland

This is to certify that attached is a true and complete copy of policy CIP191238 issued to LORENZO MARQUEZ DBA LM CONSTRUCTION on behalf of Atain Specialty Insurance Company.

In witness thereof, I have hereunto set my hand this twenty first day of November 2019.

Jessalynn Suda
Corporate Associate Vice President

Sworn to and subscribed before me this

21st Day of November, 2019

My commission expires 8/15/25

Shawn E. Courtney
Notary Public

Shawn E. Courtney
Notary Public of Michigan
Oakland County
Expires 08/15/2025
Acting in the County of ______

# COMMERCIAL LINES POLICY

ATAIN

SPECIALTY
INSURANCE COMPANY

30833 Northwestern Hwy., Ste. 220, Farmington Hills, MI 48334

This Policy may contain one or more of these coverages:

COMMERCIAL PROPERTY
COMMERCIAL LIABILITY
CRIME
INLAND MARINE
COMMERCIAL AUTO
DIRECTORS & OFFICERS LIABILITY

IN WITNESS WHEREOF, the company has caused this policy to be signed by its President and its Secretary and countersigned on the declarations page by a duly authorized representative of the company.

Secretary

President

(Attach Declarations Page, Coverage Parts, Schedules and Endorsements, if any, here)

# COMMON POLICY DECLARATIONS

## ATAIN SPECIALTY INSURANCE COMPANY

FARMINGTON HILLS, MICHIGAN
PRIMARY FACILITY POLICY

NEW POLICY
Renewal of Number

Policy Number
**CIP191238**

**Item 1.** Named Insured and Mailing Address:

LORENZO MARQUEZ
DBA: LM CONSTRUCTION
26958 MERRIL AVE
MADERA, CA 93638

Agent Name and Address:

BURNS & WILCOX INSURANCE SERVICES, INC.
9370 CHESAPEAKE DRIVE, SUITE 200
SAN DIEGO, CA 92123

**Item 2.** Policy Period From: 09/11/2013 To: 09/11/2014
**12:01 A.M. Standard Time at the address of the Named Insured as stated herein.**

**Item 3.** Retroactive Date: NONE

**Item 4.** Business Description: REMODELING CONTRACTOR

**Item 5.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Premium |
|---|---|
| Commercial Property Coverage Part | $ [redacted] |
| Commercial General Liability Coverage Part | $ [redacted] |
| Commercial Crime Coverage Part | $ [redacted] |
| Commercial Inland Marine Coverage Part | $ [redacted] |
| Professional Liability Coverage Part | $ [redacted] |
| Non-Profit Organization Liability Coverage Part | $ [redacted] |
| Coverage for Certified Acts of Terrorism | $ [redacted] |
| | $ |
| | $ |
| CA STATE TAX: | $ [redacted] |
| CA STAMPING FEE: | $ [redacted] |
| | $ |
| | $ |
| Total | $ [redacted] |

Minimum & Advance Premium [redacted] %
Minimum Earned Premium [redacted] % of the original premium.

**Item 6.** Forms and endorsements applicable to all Coverage Parts:

**PER SCHEDULE OF FORMS AND ENDORSEMENTS**

Countersigned 09/16/2013-WLE-LMM
DATE

By ______________
COUNTERSIGNATURE

SOFAE (02/05)

# SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. CIP191238 Effective Date: 09/11/2013

12:01 A.M., Standard Time

**COMMON POLICY FORMS:**

| | | |
|---|---|---|
| AF-100 | 07/2012 | COMMERCIAL LINES POLICY JACKET (PRIMARY FACILITY) |
| UNLPF-D-1 | 04/2013 | COMMON POLICY DECLARATIONS (PRIMARY FACILITY) |
| SOFAE | 02/2005 | SCHEDULE OF FORMS AND ENDORSEMENTS |
| BW-61 | 04/2007 | SCHEDULE OF LOCATIONS |
| AF-900 | 07/2012 | SERVICE OF SUIT ENDORSEMENT |
| AF-3380 | 07/2012 | FRAUD AND MISREPRESENTATION ENDORSEMENT |
| AF-3550 | 07/2012 | MINIMUM EARNED PREMIUM AND CANCELLATION CLAUSE |
| AF001707 | 03/2013 | AMENDMENT OF NONPAYMENT CANCELLATION CONDITION |
| IL0017 | 11/1998 | COMMON POLICY CONDITIONS |

**COMMERCIAL GENERAL LIABILITY FORMS:**

| | | |
|---|---|---|
| UNLPF-SD-1L | 09/2011 | COMMERCIAL GENERAL LIABILITY COVERAGE PART SUPPLEMENTAL DECLARATIONS |
| BW-SD-2L | 01/2013 | COMMERCIAL GENERAL LIABILITY COVERAGE PART EXTENSION OF DECLARATIONS |
| AF-3378 | 07/2012 | AMENDMENT OF SECTION IV-CONDITIONS AND ADDITIONAL CONDITIONS |
| AF-3397 | 07/2012 | EXTERIOR INSULATION AND FINISH SYSTEM AND DRYWALL EMISSION EXCLUSION |
| AF-3400 | 07/2012 | ABSOLUTE SILICA OR SILICA-RELATED DUST EXCLUSION |
| AF-33510 | 07/2012 | CLASSIFICATION LIMITATION |
| AF-33515A REV 1 | 07/2012 | NEW CONSTRUCTION RESIDENTIAL EXCLUSION |
| AF000839 | 07/2012 | EMPLOYEES, SUBCONTRACTORS, INDEPENDENT CONTRACTORS, TEMPORARY WORKERS |
| AF000849 | 02/2013 | ROOFING OPERATIONS ENDORSEMENT |
| AF000873 | 07/2012 | KNOWN INJURY OR DAMAGE EXCLUSION PERSONAL AND ADVERTISING INJURY |
| AF000899 | 07/2012 | AMENDMENT-AIRCRAFT, AUTO OR WATERCRAFT EXCLUSION |
| AF001007 | 11/2012 | COMBINED COVERAGE AND EXCLUSION ENDORSEMENT |
| AF001396 | 07/2012 | INFRINGEMENT, MISAPPROPRIATION AND UNFAIR COMPETITION EXCLUSION |
| AF001397 B | 07/2012 | PRIMARY AND NON-CONTRIBUTING INSURANCE (BLANKET) |
| AF001401 | 07/2012 | DAMAGE TO PREMISES RENTED TO YOU LIMITATION-FIRE LEGAL LIABILITY COVG |
| BW-76 | 07/2008 | EXCLUSION-DESIGNATED OPERATIONS-STATES OF NEW YORK AND WASHINGTON |
| CG0001 | 04/2013 | COMMERCIAL GENERAL LIABILITY COVERAGE FORM |
| CG0300 | 01/1996 | DEDUCTIBLE LIABILITY INSURANCE |
| CG2033 | 04/2013 | ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-AUTOMATIC STATUS |
| CG2037 B | 04/2013 | ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-COMPL OPNS (BLANKET) |
| CG2154 | 01/1996 | EXCLUSION-DESIGNATED OPERATIONS COVERED BY A WRAP-UP INSURANCE PROGRAM |
| CG2167 | 12/2004 | FUNGI OR BACTERIA EXCLUSION |
| CG2173 | 01/2008 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM |
| CG2404 B | 05/2009 | WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS (BLANKET) |
| CG2426 | 04/2013 | AMENDMENT OF INSURED CONTRACT DEFINITION |
| CG2503 | 05/2009 | DESIGNATED CONSTRUCTION PROJECT(S)-GENERAL AGGREGATE LIMIT |

**ADDITIONAL FORMS:**

| | | |
|---|---|---|
| CAPRNOTICE | 12/2011 | NOTICE-PREMIUM REFUNDS (CALIFORNIA) |
| SLA-D-2 | 07/2011 | SURPLUS LINES NOTICE (CALIFORNIA) |

# ATAIN SPECIALTY INSURANCE COMPANY

## SCHEDULE OF LOCATIONS

Policy No. CIP191238

Effective Date 09/11/2013
12:01 A.M. Standard Time

Named Insured LM CONSTRUCTION

Agent No.

| Prem. No. | Bldg. No. | Designated Premises (Address, City, State, Zip Code) | Occupancy |
|---|---|---|---|
| 1 | 1 | 26958 MERRIL AVE, MADERA, CA 93638 | |

# ATAIN SPECIALTY INSURANCE COMPANY

THIS ENDORSEMENT FORMS A PART OF THE POLICY TO WHICH ATTACHED, EFFECTIVE ON THE INCEPTION DATE OF THE POLICY UNLESS OTHERWISE STATED HEREIN (THE FOLLOWING INFORMATION IS REQUIRED ONLY WHEN THIS ENDORSEMENT IS ISSUED SUBSEQUENT TO PREPARATION OF THE POLICY.)

ENDORSEMENT EFFECTIVE: 09/11/2013 ISSUED TO:

ENDORSEMENT: BY:

POLICY NUMBER: CIP191238

COUNTERSIGNED BY: ______________________________
AUTHORIZED REPRESENTATIVE)

## SERVICE OF SUIT ENDORSEMENT

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United Sates of America or Canada and will comply with all requirements necessary to give such Court Jurisdiction and all matters arising hereunder shall be determined in accordance with the law and the practice of such Court.

It is further agreed that service of process in such suit may be made upon the Claims & Litigation Director,, Atain Specialty Insurance Company, Kaufman Financial Center, 30833 Northwestern Highway, Farmington Hills, MI 48334, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such Court or by the final decision of the Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America or province of Canada, which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon who may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

ENDORSEMENT

**This Endorsement Changes the Policy - Please Read it Carefully**

## FRAUD AND MISREPRESENTATION ENDORSEMENT

This policy was issued based on the information supplied on an application and other correspondence, including your claims or loss history. This information is attached to and considered to be part of this policy.

You should review this information carefully because the truth of this information was of paramount importance in influencing our decision to issue this policy.

You, for all the insureds under this policy, do warrant the truth of such information to the best of your and their knowledge at the inception date of this policy.

If such information is false or misleading, it may cause denial of coverage or voiding of the policy.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

# ATAIN SPECIALTY INSURANCE COMPANY

**This Endorsement Changes The Policy. Please Read It Carefully.**

**MINIMUM EARNED PREMIUM AND CANCELLATION CLAUSE**

This endorsement modifies insurance provided under the following Coverage Forms:

**COMMERCIAL CRIME COVERAGE FORM**
**COMMERCIAL INLAND MARINE COVERAGE FORM**
**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**COMMERCIAL PROPERTY COVERAGE PART**
**GARAGE COVERAGE FORM**
**GARAGEKEEPERS LEGAL LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

The minimum premium for this policy is [redacted] % of the annual written premium, and such minimum earned premium is not subject to short rate or pro-rata adjustment in the event of cancellation by the insured. It is understood and agreed that cancellation for non-payment of premium shall be deemed a request by the insured for cancellation of this policy. In such case, the terms of the minimum earned premium and cancellation clause apply.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The Information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: CIP191238

Named Insured: LM CONSTRUCTION

Endorsement Effective Date: 09/11/2013

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | | |
|---|---|---|
| Endorsement Number | Inception Date | Expiration Date |
| Endorsement Effective | Policy Number | |
| Named Insured: | | |

## AMENDMENT OF NONPAYMENT CANCELLATION CONDITION

Wherever a Cancellation Condition for nonpayment of premium is found in the policy, the following is added:

If the insured failed to pay premium charged on a prior policy we issued and payment was due during the current renewal policy term, we may cancel this policy by mailing or delivering to the first Named Insured and mortgagee, if any, written notice of cancellation at least ten (10) days before the effective date of cancellation.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.


Copyright, Insurance Services Office, Inc., 1998

# ATAIN SPECIALTY INSURANCE COMPANY
## PRIMARY FACILITY
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of Policy/Certificate Number: CIP191238

| | | |
|---|---|---|
| General Aggregate Limit (other than Products/Completed Operations | $ [redacted] | |
| Products/Completed Operations Aggregate Limit | $ | |
| Personal and Advertising Injury Limit | $ | |
| Each Occurrence Limit | $ | |
| Damage to Premises Rented to You Limit | $ | any one premises |
| Medical Expense Limit | $ | any one person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business: [X] Individual [ ] Joint Venture [ ] Partnership [ ] Corporation [ ] Limited Liability Company [ ] Other

Business Description: REMODELING CONTRACTOR

Location of All Premises You Own, Rent or Occupy: PER SCHEDULE OF LOCATIONS

**PREMIUM**

| Classification | Code No. | *Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| 1) CARPENTRY-INTERIOR | 91341 PAYROLL | [redacted] | INCL | [redacted] $ | INCL $ | [redacted] |
| 1) CARPENTRY | 91342 PAYROLL | [redacted] | INCL | [redacted] | INCL | [redacted] |
| 1) ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-AUTOMATIC STATUS, WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS (BLANKET), PRIMARY AND NON CONTRIBUTING INSURANCE (BLANKET) (PER CG2033 CG2404 B AF001397 B) - PREMIUM IS FULLY EARNED | 9999S UNITS | 1 | N/A | INCL | N/A | INCL |
| 1) DESIGNATED CONSTRUCTION PROJECT(S)-GENERAL AGGREGATE LIMIT (PER CG2503) - PREMIUM IS FULLY EARNED | 99992 UNITS | 1 | N/A | INCL | N/A | INCL |

SEE EXTENSION OF DECLARATIONS

*(a) Area, (c) Total Cost, (m) Admissions, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

**Total Coverage Part Premium: $** [redacted]

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this Policy/Certificate at time of issue:

PER SCHEDULE OF FORMS AND ENDORSEMENTS

**DEDUCTIBLE:** PER CG0300

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

# ATAIN SPECIALTY INSURANCE COMPANY

## PRIMARY FACILITY

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

## EXTENSION OF DECLARATIONS

This Extension Of Declarations form a part of Policy/Certificate Number: CIP191238

**LOCATION OF PREMISES**

Location of All Premises You Own, Rent or Occupy:

**PREMIUM**

| Classification | Code No. | *Premium Basis | Rate Pr/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| 1) ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-COMPL OPNS (BLANKET) (PER CG2037 B) - PREMIUM IS FULLY EARNED | 99999 UNITS | [redacted] | N/A | [redacted] | $ N/A | $ [redacted] |

**Extension of Declarations - Total Advance Premium: $ INCLUDED**

**ENDORSEMENT**

This Endorsement Changes The Policy. Please Read It Carefully.

## AMENDMENT OF SECTION IV – CONDITIONS
## ADDITIONAL CONDITIONS – SECTION IV – CONDITIONS

This endorsement modifies insurance provided under the following Coverage Forms:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR**

**A.** The following changes are made to the **COMMERCIAL GENERAL LIABILITY COVERAGE** and the **PRODUCTS/COMPLETED OPERATIONS COVERAGE FORMS:**

**I.** The following is added to **Condition 4. – Other Insurance** in **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** of the **COMMERCIAL GENERAL LIABILITY COVERAGE** and the **PRODUCTS/COMPLETED OPERATIONS COVERAGE FORMS**:

**Excess Provision – Vendors**

The coverage afforded the insured under this Coverage Form will be excess over any valid and collectible insurance available to the insured as an additional insured under a policy issued to a manufacturer or distributor for products manufactured, sold, handled or distributed.

**II.** **Paragraph 5. Premium Audit** is replaced by the following:

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Form in accordance with our rules and rates.

**b.** The Minimum and Advance Premium shown on the Common Declarations page is the Advance Premium for the full policy term applicable to this policy. At the close of each audit period, we will compute the Earned Premium for that period. Audit Premiums are due and payable to us on notice to the first Named Insured. If the Audit Premium is less than the Minimum and Advance Premium, the Minimum and Advance Premium will apply with no return to you. For purposes of this policy, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

**Advance Premium** – The premium that is stated on the Common Declarations page and payable in full by the first Named Insured at the inception of the policy.
**Audit Premium** – The premium that is developed by calculating the difference between the Advance Premium and the Earned Premium.
**Earned Premium** – The premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the policy period.
**Minimum Premium** – The lowest premium for which this insurance will be written for the policy period.

**c.** In no event will the final premium retained by us be less than the Minimum and Advance Premium shown on the Common Declarations of this policy. If no other premium is designated specifically as a Minimum and Advance Premium, the Minimum and Advance Premium shown on the Common Declarations is the Minimum and Advance. Such minimum is subject to the short rate or pro rate adjustment according to the policy provisions in case of cancellation of the policy.

d. The policy is also subject to a Minimum Earned Premium of [redacted]% of the Minimum and Advance premium shown on the Common Declarations of this policy. Such Minimum Earned Premium is not subject to pro rate or short rate adjustment in the event of cancellation by you and we shall retain no less than the Minimum Earned premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the Minimum Earned Premium, unless short rate calculation earns for us more than the Minimum Earned Premium. If no percentage appears above, then the Minimum Earned Premium percentage as shown on the Common Declarations page will apply.

III. The following Condition is added to **SECTION IV – CONDITIONS**:

**Premium Financing/Cancellation of Financed Policy**

a. When we receive notification that the premium for this policy has been advanced by a premium finance company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this policy.

b. When we otherwise become aware that you financed all or part of this policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This policy alone governs coverage.

c. When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance and we will pay any return premium due as directed by the premium finance company. In the absence of statutes to the contrary, non-payment to a premium finance company shall be considered the same as if the first Named Insured cancelled the policy. The return premium will be calculated on a short rate basis. The premium finance company will usually require the payment of any return premium be made directly to them and we will honor that request unless applicable law requires otherwise. Any requested termination date set by the premium finance company that conflicts with other policy provisions or other operation of law, is subject to both the policy provisions and the applicable law. You must resolve any resulting premium difference directly with the finance company.

d. The Minimum Earned Premium described in Condition **5.**, Item **d.** above may not be financed as it is not refundable.

All other terms and conditions of this policy remain unchanged.

B. The following changes are made to the **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR:**

I. The following changes are made to **SECTION IV – CONDITIONS:**

a. Paragraph **9. Premiums** is replaced by the following:

**9. Premiums**

The "contractor" or the first Named Insured:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums we pay.

b. Paragraph **10. Premium Audit** is replaced by the following:

**10. Premium Audit**

a. We will compute all premiums for this Coverage Form in accordance with our rules and rates.

b. The Minimum and Advance Premium shown on the Common Declarations page is the Advance Premium for the full policy term applicable to this policy. At the close of each audit period, we will compute the Earned Premium for that period. Audit Premiums are due and payable to us on notice to the first Named Insured. If the Audit Premium is less than the Minimum and Advance Premium, the Minimum and Advance Premium will apply with no return to you. For purposes of this policy, the terms Advance Premium, Audit Premium, Earned Premium and Minimum Premium are defined as follows:

**Advance Premium** – The premium that is stated on the Common Declarations page and payable in full by the first Named Insured at the inception of the policy.
**Audit Premium** – The premium that is developed by calculating the difference between the Advance Premium and the Earned Premium.
**Earned Premium** – The premium that is developed by applying the rate(s) scheduled in the policy to the actual premium basis for the policy period.
**Minimum Premium** – The lowest premium for which this insurance will be written for the policy period.

c. In no event will the final premium retained by us be less than the Minimum and Advance Premium shown on the Common Declarations of this policy. If no other premium is designated specifically as a Minimum and Advance Premium, the Minimum and Advance Premium shown on the Common Declarations is the Minimum and Advance. Such minimum is subject to the short rate or pro rate adjustment according to policy provisions in case of cancellation of the policy.

d. The policy is also subject to a Minimum Earned Premium of _[redacted]% of the Minimum and Advance premium shown on the Common Declarations of this policy. Such Minimum Earned Premium is not subject to pro rate or short rate adjustment in the event of cancellation by you and we shall retain no less than the Minimum Earned premium regardless of the policy term. Cancellation of the policy for non-payment of premium shall be deemed a request by you for cancellation of this policy thereby invoking the Minimum Earned Premium, unless short rate calculation earns for us more than the Minimum Earned Premium. If no percentage appears above, then the Minimum Earned Premium percentage as shown on the Common Declarations page will apply.

e. The first Named Insured must keep records of the information we need for premium computation and send us copies at such times as we may request.

III. The following Condition is added to **SECTION IV – CONDITIONS:**

**Premium Financing/Cancellation of Financed Policy**

a. When we receive notification that the premium for this policy has been advanced by a premium finance company, we will acknowledge receipt of the premium finance agreement to the finance company on our form, when requested, but we will not amend or extend this policy.

b. When we otherwise become aware that you financed all or part of this policy's premium, regardless of whether or not we receive a notice of premium financing, we will not be bound, as respects coverage we provide, by the terms of your finance agreement. This policy alone governs coverage.

c. When you sign a premium finance agreement, by the terms of the agreement, you may be giving the premium finance company the right, under certain conditions, to cancel this policy on your behalf. When we receive notice of cancellation from the finance company, we will recognize their request for termination of this insurance and we will pay any return premium due as directed by the premium finance company. In the absence of statutes to the contrary, non-payment to a premium finance company shall be considered the same as if the first Named Insured cancelled the policy. The return premium will be calculated on a short rate basis. The premium finance company will honor that request unless applicable law requires otherwise. Any requested termination date set by the premium finance company that conflicts with other policy provisions or other operation of law, is subject to both the policy provisions and applicable law. You must resolve any resulting premium difference directly with the finance company.

d. The Minimum Earned Premium described in Condition **5.**, Item **d.** above may not be financed as it is not refundable.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: CIP191238

Named Insured: LM CONSTRUCTION

Endorsement Effective Date: 09/11/2013

____________________________
Authorized Representative

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXTERIOR INSULATION AND FINISH SYSTEM (EIFS) AND DRYWALL EMISSION EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM - COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | | |
|---|---|---|
| Endorsement Number | Inception Date | Expiration Date |
| Endorsement Effective | Policy Number | |
| Named Insured | | |

**A.** The following **Exclusion** is added to Part **2.**, **Exclusions of Coverage A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY** of **SECTION 1 – COVERAGES** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** , Part **2. Exclusions** of the **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM - COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR** .

**Exterior Insulation And Finish System (EFIS) Or Drywall Emissions**

This insurance does not apply to any "bodily injury" "property damage" or "personal and advertising injury" arising out of, caused by, or attributable to, whether in whole or in part, the following:

**1.** The design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement of any " exterior insulation and finish system" or emissions that would emit from any drywall or any part thereof or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashing, coatings, caulking or sealants in connection with such a system or drywall;

**2.** Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" or drywall is used on any part of that structure; or

This exclusion applies to "work" or "your work" as described in the above Paragraphs **1.** or **2.** that is performed by you or on your behalf.

**B.** For the purposes of this endorsement, an "exterior insulation and finish system" (also known as synthetic stucco) means a non-load bearing exterior cladding or finish system and all component parts therein, used on any part of any structure, and consisting of:

1. Rigid or semi-rigid insulation board made of expanded polystyrene or other materials;
2. The adhesive or mechanical fasteners used to attach the insulation board to the substrate;
3. A reinforced base coat;
4. A finish coat providing surface texture and color; and
5. Any flashing, caulking or sealant used with the system for any purpose.

All other terms and conditions of this policy remain unchanged.

# ABSOLUTE SILICA OR SILICA-RELATED DUST EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**



# ABSOLUTE SILICA OR SILICA-RELATED DUST EXCLUSION



This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**
**GARAGE COVERAGE FORM**

**A.** The following **Exclusion** is added to Part **2. Exclusions** of **SECTION 1 - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**, Part **2. Exclusions** of **SECTION 1 - COVERAGES, BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of the **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM** and **B. Exclusions** of **SECTION II - LIABILITY COVERAGE** of the **GARAGE COVERAGE FORM**:

**Absolute Silica Or Silica-Related Dust Exclusion**

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the mining, manufacture, handling, use, ingestion, inhalation, absorption, distribution, sale, existence, abatement, "enclosure", "encapsulation" or removal of "silica" or "silica-related dust" in any form.

We have no duty to defend you or to investigate any "occurrence", "offense" or "suit" against you, which arises out of "silica", or "silica-related dust" in any form. If you investigate or defend any such "occurrence", "offense" or "suit", we have no duty to pay the expenses of the investigation or defense, nor do we have any duty to reimburse you.

Any loss, cost or expense arising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of silica or silica-related dust; or

Any loss, cost or expense arising out of any claim or suit on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of silica or silica-related dust.

**B.** This Endorsement shall not serve to increase our Limits of Insurance, as described in **SECTION III - LIMITS OF INSURANCE** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** and the **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM** and Part **C. Limit of Insurance** in **SECTION II - LIABILITY COVERAGE** of the **GARAGE COVERAGE FORM**.

**C.** For the purpose of this endorsement, the following **DEFINITIONS** are added:

1. "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.
2. "Silica-related dust" means a mixture or combination of "silica" and other dust or particles.
3. "Encapsulant" means a substance applied directly to the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance, either by creating a membrane over the surface or by penetrating the material or substance and binding its components together.
4. "Encapsulation" means the coating of the surface of a material or substance with an "encapsulant" to prevent the discharge, dispersal, release or escape of any part of that material or substance.
5. "Enclosure" means those procedures and operations (excluding "encapsulation") required to construct an airtight, impermeable wall, ceiling or other permanent barrier around the surface of a material or substance to prevent the discharge, dispersal, release or escape of any part of that material or substance.

All other terms, conditions and exclusions included in this policy are applicable to this Endorsement and will remain unchanged.

This Endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy).

Policy Number:

Named Insured:

Endorsement Effective Date:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CLASSIFICATION LIMITATION

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Number | Inception Date | Expiration Date |
|---|---|---|
| Endorsement Effective | Policy Number | |
| Named Insured | | |

Coverage under this policy is specifically limited to, and applies only to those classifications as described under the applicable Coverage Part or Schedule designated in the Declarations Page of this policy.

This policy excludes coverage for any operation not specifically listed in the Coverage Part, Schedule or Declarations Page of this policy.

This Endorsement Changes The Policy. Please Read It Carefully.

# NEW CONSTRUCTION RESIDENTIAL EXCLUSION

In consideration of the premium charged, it is understood and agreed that no coverage exists and no duty to defend is provided for:

Any and all claims, including but not limited to, claims for "bodily injury", "property damage" or "personal and advertising injury", arising out of, related to, caused by, or associated with, in whole or in part, the "new construction" of residential properties, including but not limited to, single family dwellings, duplexes, three and four family dwellings, townhomes or condominiums. This includes any and all appurtenances at any properties referenced in this endorsement including, but not limited to, clubhouses, detached garages, detached buildings and swimming pools.

This exclusion applies to any operations that occur:

1. Prior to the inception of this policy;
2. During this policy term; or
3. Prior to the inception of this policy and continues during the policy term.

For purposes of this endorsement:

"New construction" means operations that involve the original construction of a building or building unit.

This endorsement would not apply to:
1. Any apartment buildings; or
2. Any operations in the States listed below:

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

Authorized Representative

This Endorsement Changes The Policy. Please Read It Carefully.

# EMPLOYEES, SUBCONTRACTORS, INDEPENDENT CONTRACTORS, TEMPORARY WORKERS, LEASED WORKERS OR VOLUNTEERS

This endorsement modifies insurance provided under the following Coverage Forms:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR**

I. Exclusion **e., Employer's Liability** in Part **2**, **Exclusions** of **SECTION I – COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** of the **COMMERCIAL GENERAL LIABILITY COVERAGE FORM** is replaced by the following:

e. **Employer's Liability**

1. "Bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;
2. Any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;
3. "Bodily injury" sustained by the spouse, parent, brother, sister, companion or offspring of an "employee", subcontractor, employee of any subcontractor,"independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured as a consequence of "bodily injury" to such an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "Independent contractor", "temporary worker" "leased worker", "volunteer worker" of any insured or any person performing work or services for any insured in the course of his or her employment by or service to any insured; or
4. Contractual liability as defined in Section I - Exclusions, item 2 b. of the Commercial General Liability Coverage Form CG 0001.

For the purposes of this endorsement, "independent contractor" means one that contracts to do work or perform a service for another and that retains control over the means or methods used in doing the work or performing the service. "Independent contractor" includes, but is not limited to, subcontractors and any employees of a subcontractor, any employee of an independent contractor, any "employees" of any insured, agents, representatives, volunteers, spouses, family members of any insured or any Additional Insureds added to this policy.

For the purposes of this endorsement, "Employee " is defined as follows:

"Employee" includes a "leased worker".

This exclusion applies to all causes of action arising out of "bodily injury" to any "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", "volunteer worker" or any person performing work or services for any insured because of "bodily injury"" including care and loss of services.

II. Exclusion **f. Employers Liability** in Part **2**, **Exclusions** of **SECTION 1 - COVERAGES, BODILY INJURY AND PROPERTY DAMAGE LIABILITY** in the **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM - COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR** form is replaced by the following:


Includes copyrighted material of Insurance services Office, Inc. with its permission
Copyright, Insurance Services Office, 2004

f. **Employer's Liability**

1. "Bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", volunteer of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;
2. Any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", volunteer of any insured or any person performing work or services for any insured arising out of and in the course of employment by or service to any insured for which any insured may be held liable as an employer or in any other capacity;
3. "Bodily injury" sustained by the spouse, parent, brother, sister, companion or offspring of an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", volunteer of any insured or any person performing work or services for any insured as a consequence of "bodily injury" to such an "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", volunteer or any person performing work or services for any insured in the course of his employment by or service to any insured; or
4. Contractual liability as defined in Section I - Exclusions, item 2 b. of the Owners And Contractors Protective Liability Coverage Form CG 0009.

For the purposes of this endorsement, "independent contractor" means one that contracts to do work or perform a service for another and that retains control over the means or methods used in doing the work or performing the service. "Independent contractor" includes, but is not limited to, subcontractors and any employees of any subcontractor, any employee of an independent contractor, any "employees" of any insured, agents, representatives, volunteers, spouses, family members of any insured or any Additional Insureds added to this policy.

For the purposes of this endorsement, "Employee " is defined as follows:

"Employee" includes a "leased worker".

This exclusion applies to all causes of action arising out of "bodily injury" to any "employee", subcontractor, employee of any subcontractor, "independent contractor", employee of any "independent contractor", "temporary worker", "leased worker", volunteer or any person performing work or services for any insured by any person or organization for damages because of "bodily injury", including care and loss of services.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

______________________________
Authorized Representative


Includes copyrighted material of Insurance services Office, Inc. with its permission
Copyright, Insurance Services Office, 2004

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ROOFING OPERATIONS ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | | |
|---|---|---|
| Endorsement Number | Inception Date | Expiration Date |
| Endorsement Effective | Policy Number | |
| Named Insured | | |

The following exclusions are added to part **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** :

1. **ROOFING OPERATIONS**
The contractor shall cover all "open roofs" if the roof is to be left unattended. Contractor must take "appropriate" steps to determine adverse weather and provide "appropriate" temporary waterproof covering, able to withstand the elements. If contractor fails to do either, any resulting "property damage" to any building or structure or its contents will not be covered by this policy.

The term "open roofs" as used in this endorsement shall include any roof or section thereof where the protective covering (shingles, tar, felt paper, etc.) has been removed leaving exposed the wood shell in addition to the wood shell or section thereof being removed.

The term "appropriate" as used in this endorsement shall mean that conduct or action customarily taken or used by similar contractors in the jurisdiction to protect or prevent damage, or that which is customarily done by contractors in the same field under similar circumstances.

2. "Bodily injury" or "property damage" arising out of:
**(1)** "Your work" or in the "products-completed operations hazard" involving any work performed on modified bitumen, membrane, or rubber roofs; or
**(2)** The application of hot tar, polyurethane foam or roofing systems that require the use of setting fire (torch work) or any other heat processes on roofs.

This exclusion would not apply to "your work" or in the "products-completed-operations hazard " for work involving any cold processes.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# KNOWN INJURY OR DAMAGE EXCLUSION PERSONAL AND ADVERTISING INJURY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Number | Inception Date / Expiration Date |
|---|---|
| Endorsement Effective | Policy Number |
| Named Insured | |

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** :

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:

**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes any continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II - WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;
**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or
**(3)** Becomes aware by an other means that "personal and advertising injury" has occurred or has begun to occur.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# AMENDMENT - AIRCRAFT, AUTO OR WATERCRAFT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Number | Inception Date | Expiration Date |
|---|---|---|
| Endorsement Effective | Policy Number | |
| Named Insured | | |

**SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** paragraph **(g.) Aircraft, Auto Or Watercraft** is deleted and replaced with the following:

g. **Aircraft, Auto Or Watercraft**

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of or in connection with any aircraft or watercraft unless as outlined below;
(2) "Bodily injury" or "property damage" arising out of or in connection with any "auto" unless as outlined below; or
(3) The "loading or unloading" of any aircraft, "auto" or watercraft by any insured.

This exclusion applies to "bodily injury" or "property damage" arising out of any aircraft, "auto" or watercraft, whether or not owned, maintained, used, rented, leased, hired, loaned, borrowed or entrusted to others or provided to another by any insured.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, entrustment, permitting, training or monitoring of others by an insured.

This exclusion applies even if the claims against any insured allege direct or vicarious liability.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own, rent or on any premises or in the water while being worked upon;
(2) A watercraft you do not own that is:
  (a) Less than 26 feet long; and
  (b) Not being used to carry persons or property for a charge;
(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or any insured;
(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft;
(5) "Bodily injury" or "property damage" arising out of:
  (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or
  (b) The operation of any of the machinery or equipment listed in Paragraph **f. (2)** or **f. (3)** of the definition of "mobile equipment"; or
(6) "Bodily injury" or "property damage" arising out of maintenance, service or repair of an "auto" by the Named Insured or their employees on the property of the insured or on the premises of others.

# COMBINED COVERAGE AND EXCLUSION ENDORSEMENT

**This Endorsement Changes the Policy. Please Read it Carefully.**

This endorsement modifies insurance provided under the following coverage parts if those coverage parts are included in your policy:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART**
**GARAGE COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

## I. ASBESTOS EXCLUSION

This insurance does not apply to:

A) "Bodily Injury" or "Property Damage", in whole or in part, either directly or indirectly, arising out of, based upon, or attributable to any of the following:

1. Asbestos or any asbestos related injury or damage;
2. Any alleged act, error, omission or duty involving asbestos, its use, exposure, presence, existence, detention, removal, elimination or avoidance; or
3. The use, exposure, presence, existence, detention, removal, elimination or avoidance of asbestos in any environment, building or structure; and

B) The investigation, settlement or defense of any claim, "suit" or proceeding against the Insured alleging any actual or threatened injury or damage which arises out of or would not have occurred but for asbestos related "Bodily Injury" or "Property Damage", as described above.

## II. TOTAL LEAD EXCLUSION

The following exclusion is hereby added to **COVERAGE A., BODILY INJURY AND PROPERTY DAMAGE LIABILITY** under Paragraph **2.**, **Exclusions** and **COVERAGE B., PERSONAL AND ADVERTISING INJURY LIABILITY** under Paragraph **2.**, **Exclusions**, of the Comprehensive General Liability form and is added in general as an exclusion to other coverage forms that constitute a portion of your policy.

This insurance does not apply to:

a. "Bodily Injury", "Property Damage", or "Personal and Advertising Injury" arising, whether in whole or in part, and whether directly or indirectly, out of lead, including, but not limited to, lead contained or incorporated in any material or product;

b. Any loss, cost, or expense arising out of any:

(1) Request, demand, order, writ, Injunction or judgment that any Insured or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of lead; or

(2) Claim or "suit" for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, preventing, abating or in any way responding to, or assessing the presence or effect of any kind of lead.

## III. INDEPENDENT CONTRACTORS LIABILITY INSURANCE ENDORSEMENT

The following special conditions are made a part of any applicable coverage form or endorsement that forms a part of your policy and you warrant and agree that:

1. You have a written formal contract with such independent contractors, in force at the time of such injury or damage, verifying insurance of the types provided by this policy with the limits of insurance for such insurance equal to or greater than the limits of insurance provided by this policy; and you collect such evidence of insurance from the independent contractors before they enter the job site; and
2. Such independent contractors name you as an additional insured on their Commercial General Liability insurance policy for damages because of "Bodily Injury", "Property Damage" or "Personal and

Advertising Injury" arising out of or caused by the work, activities or operations of the independent contractor, including your supervision, review or inspection of the independent contractor; and

3. Such independent contractors have agreed, in writing, to hold you harmless from all liability, including attorney fees, arising from their acts, errors or omissions; and

4. Such independent contractors Commercial General Liability coverage is primary and our policy shall be excess of the insurance maintained by the independent contractors policy, notwithstanding the language of the Other Insurance provisions of the independent contractors policy.

Failure to comply with any of the above conditions does not alter the coverage provided by this policy. However, should you fail to comply with any of the above conditions, any subcontractors hired by any Insured will be considered your employees for premium computation purposes. You will be charged an additional premium with the entire cost of labor charged by such subcontractors used as payroll and assigned to the applicable class for the work performed.

## IV. EMPLOYMENT- RELATED PRACTICES EXCLUSION

A. The following exclusion is added to Paragraph **2.**, Exclusions of **COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I-Coverages)**, of the Commercial General Liability form and is added in general as an exclusion to other coverage forms that constitute a portion of your policy:

This insurance does not apply to:

"Bodily Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "Bodily Injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph **2.**, Exclusions of **COVERAGE B-PERSONAL AND ADVERTISING INJURY LIABILITY (Section I-Coverages)**:

This insurance does not apply to:

"Personal and Advertising Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of injury.

## V. NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

1. The insurance does not apply:

A. Under any Liability Coverage to "Bodily Injury""or "Property Damage":

(1) With respect to which an "Insured" under the policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "Insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency therof, under any agreement entered into by the United States of America, or any agency therof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "Bodily Injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "Bodily Injury" or "Property Damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, operated by or on behalf of, an "Insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "Insured"; or

(3) The "Bodily Injury" or "Property Damage" arises out of the furnishing by an "Insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "Property Damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of an "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "Insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste"; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property Damage" includes all forms of radioactive contamination of property.

**VI. EXCLUSION (Malpractice and Professional Services)**

The following exclusion is added to Part **2. Exclusions** of **SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and Part **2. Exclusions** of **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** of the **COMMERCIAL GENERAL LIABILITY FORM**:

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising Injury" including payment for loss or defense costs in connection with any claim made against any insured based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the rendering or failure to render any professional service by, but not limited to, any Accountant, Architect, Engineer, Insurance Agent or Broker, Lawyer, Medical Professional or Real Estate Agent Broker, or any other service that is of a professional nature.

**VII. PHYSICAL-SEXUAL ABUSE EXCLUSION**

This insurance does not apply to any "occurrence", suit, liability, claim, demand or causes of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by:

a. The insured or the insured's employees;

b. Patrons of the Insured's business

c. Agents of the insured;

d. "Volunteer workers";

e. Subcontractor or employee of any subcontractor;

f. 'Independent contractor" or employee of any "independent contractor"; or

g. "Leased worker".

For the purposes of this endorsement:

1. "Independent contractor" means one that contracts to do work or perform a service for another and that retains control over the means or methods used in doing the work or performing the service. "Independent contractor" includes, but is not limited to, subcontractors and any employees of a subcontractor, any employee of an independent contractor, any employees of the insured, agents, representatives, volunteers, spouses, family members or the insured or any Additional Insureds added to this policy.

2. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker". "Temporary worker" means a person who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short term workload conditions.

3. "Volunteer worker" means a person who is not your employee, and who donates her or her work and acts at the direction of and within the scope of duties determined by you and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

## VIII. TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION

Exclusion **f.** under Paragraph **2.**, **Exclusions**, of **Coverage A.-Bodily Injury and Property Damage Liability (Section I-Coverages)** is hereby deleted. The following exclusion is hereby added to **Coverage A., Bodily Injury and Property Damage Liability** under Paragraph **2., Exclusions** and to **Coverage B., Personal and Advertising Injury Liability** under **Paragraph 2., Exclusions.**

This insurance does not apply to:

(1) "Bodily Injury", "Property Damage", "Personal and Advertising Injury" caused by or arising out of in whole or in part, the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "Bodily Injury" or "Property Damage" arising out of heat, smoke, or fumes from a hostile fire unless that hostile fire occurred or originated:

(a) At any premises, site, or location which is or was at any time used by or for any Insured or others for the handling, storage, disposal, processing or treatment of waste; or

(b) At any premises, site or location on which any Insured or any contractors or subcontractors working directly or indirectly on any Insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effects of "pollutants".

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order, writ, injunction or judgment that any "Insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, prevent, abate or in any way respond to, or assess the presence or effect of any kind of "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the presence or effect of any kind of "pollutants".

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed. Pollutants also includes carbon dioxide and any other substance that contributes to climate change.

## IX. ASSAULT AND BATTERY EXCLUSION

This insurance does not apply under **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY** arising from:

1. Assault and Battery committed by any Insured, any employee of any Insured or any other person;
2. The failure to suppress or prevent Assault and Battery by any person in 1. above;
3. resulting from or allegedly related to the negligent hiring, supervision or training of any employee of the Insured; or
4. Assault or Battery, whether or not caused by or arising out of negligent, reckless or wanton conduct of the Insured, the Insured's employees, patrons or other persons lawfully or otherwise on, at or near the premises owned or occupied by the Insured, or by any other person.

For the purposes of this exclusion, Assault and Battery includes, but is not limited to, the use of reasonable force or self-defense by any party, person, insured or employee of any insured.

Furthermore for this Exclusion, **SECTION I – COVERAGES COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, Section **2. Exclusions**, Paragraph **a. Expected Or Intended Injury** is replaced by the following:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

**X. TENDERING OF APPLICABLE LIMIT OF INSURANCE**

The **COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01** is amended as follows:

**SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, Insuring Agreement, 1, a. (2)** is deleted in its entirety and replaced with the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit" under Coverages **A** or **B** or medical expenses under Coverage **C**.

The last paragraph of **SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** is deleted in its entirety and replaced with the following:

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** When we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit" under Coverages **A** or **B** or medical expenses under Coverage **C**; or

**c.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

The **OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM – COVERAGE FOR OPERATIONS OF DESIGNATED CONTRACTOR FORM CG 00 09** is amended as follows:

**SECTION I – COVERAGES BODILY INJURY AND PROPERTY DAMAGE LIABILITY, Insuring Agreement, 1, a. (2)** is deleted in its entirety and replaced with the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements, or tendered the applicable limit of insurance to any person or organization that has a financial interest in any claim or "suit".

The last paragraph of **SECTION I – COVERAGES, SUPPLEMENTARY PAYMENTS** is deleted in its entirety and replaced with the following:

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** When we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit"; or

**c.** The conditions set forth above, or the terms of the agreement described in paragraph **f.** above, are no longer met.

The **GARAGE COVERAGE CA 00 05** is amended as follows:

The last paragraph of **1. a. "Garage Operations" – Other Than Covered "Autos"** of **A COVERAGE** of **SECTION II – LIABILITY COVERAGE** is deleted in its entirety and replaced with the following:

We have the right and duty to defend any "insured" against a "suit" asking for these damages.

However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Other Than Covered "Autos" has been exhausted by payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit".

The last paragraph of **2. "Garage Operations" – Covered "Autos"** of **A COVERAGE** of **SECTION II – LIABILITY COVERAGE** is deleted in its entirety and replaced with the following:

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Liability Coverage Limit of Insurance – "Garage Operations" – Covered "Autos" has been exhausted by payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit".

Paragraph **(6)** of Section **4. Coverage Extensions, a. Supplementary Payments** is deleted in its entirety and replaced with the following:

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance, when we have used up the applicable limit of insurance in the payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit".

The **LIQUOR LIABILITY COVERAGE FORM CG 00 33** is amended as follows:

**SECTION I – LIQUOR LIABILITY COVERAGE, 1. Insuring Agreement, 1, a. (2)** is deleted in its entirety and replaced with the following:

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or when we tender the applicable limit of insurance to any person or organization that has a financial interest in a claim or "suit" under this Coverage Part.

**XI. ANTI-STACKING AND NONDUPLICATION OF LIMITS OF INSURANCE**

If any Coverage Form, Coverage Part or policy issued to you by us or any company affiliated with us apply to the same claim for expenses or damages, the maximum Limit of Insurance for Liability Coverage under all of the Coverage Forms, Coverage Parts or policies shall not exceed the highest applicable Limit of Insurance available under any one Coverage Form, Coverage Part or policy.

This endorsement does not apply to any Coverage Form, Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this policy.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to preparation of the policy).

Policy Number:

Named Insured:

Endorsement Effective Date:

Authorized Representative

ENDORSEMENT

This Endorsement Changes the Policy - Please Read it Carefully

# INFRINGEMENT, MISAPPROPRIATION AND UNFAIR COMPETITION EXCLUSION

It is hereby agreed that this policy shall not apply to any "claim," "suit," or liability for:

A. Any infringement upon or dilution of copyright, trademark, patent, title, slogan, service mark, service name or trade dress;

B. Any invasion or infringement of or interference with the right of privacy or publicity including, but not limited to, intrusion, public disclosure of private facts, unwarranted or wrongful publicity, false light or the use of name or likeness for profit;

C. Plagiarism or misappropriation of information, trade secrets, ideas or style of doing business;

D. "Unfair competition" as defined by statute or common law, whether or not pertaining to and alleged in conjunction with a claim of plagiarism, misappropriation of information or ideas, "piracy," infringement of copyright, title, slogan, trademark, trade name, trade dress, service mark or service name.

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of this policy unless otherwise stated herein.
(The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number:

Named Insured:

Endorsement Effective Date:

ENDORSEMENT

**This Endorsement Changes the Policy - Please Read it Carefully**

# PRIMARY AND NON-CONTRIBUTING INSURANCE (Third-Party's Sole Negligence)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD LIABILITY COVERAGE PART
BUSINESSOWNERS LIABILITY COVERAGE FORM

The following is added to Section IV - Commercial General Liability Conditions, Paragraph 4:

**Section IV: Commercial General Liability Conditions**

4. Other Insurance:

d. Notwithstanding the provisions of sub-paragraphs a, b, and c of this paragraph **4**, with respect to the Third Party shown below, it is understood and agreed that in the event of a claim or "suit" arising out of the Named Insured's sole negligence, this insurance shall be primary and any other insurance maintained by the additional insured named as the Third Party below shall be excess and non-contributory.

The Third Party to whom this endorsement applies is:

ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED BY WRITTEN CONTRACT TO PERFORM SERVICES AND PRIOR TO ANY LOSS THAT ARE WITHIN THE TERMS AND CONDITIONS OF THIS POLICY TO WHICH THIS FORM IS ATTACHED.

Absence of a specifically named Third Party above means that the provisions of this endorsement apply "as required by written contractual agreement with any Third Party for whom you are performing work."

All other terms and conditions of this policy remain unchanged.

This endorsement is effective on the inception date of the policy unless otherwise stated herein. (The information below is required only when this endorsement is issued subsequent to preparation of the policy.)

Policy Number: CIP191238

Named Insured: LM CONSTRUCTION

Endorsement Effective Date: 09/11/2013


**Includes copyrighted material of Insurance Services Office, Inc. with its permission**
**Copyright, Insurance Services Office, Inc. 1994**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DAMAGE TO PREMISES RENTED TO YOU LIMITATION – FIRE LEGAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | | |
|---|---|---|
| Endorsement Number | Inception Date | Expiration Date |
| Endorsement Effective | Policy Number | |
| Named Insured | | |

A. The following language ("Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits of Insurance.") of Paragraph **2. Exclusions** under **SECTION I COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted.

B. The following language ("Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits of Insurance.") of **Exclusion j., Damage To Property** of Paragraph **2., Exclusions** of **SECTION I COVERAGES - COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is deleted.

C. Reference in the Declarations to **Damage To Premises Rented To You Limit** is changed to read **Fire Damage Limit.**

D. Paragraph **6.** of **SECTION III – LIMITS OF INSURANCE**, is deleted and replaced with the following:

   **6.** Subject to **5.** above, the **Fire Damage Limit** is the most we will pay under Coverage **A** for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

# EXCLUSION – DESIGNATED OPERATIONS – STATES OF NEW YORK AND WASHINGTON

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


# EXCLUSION – DESIGNATED OPERATIONS – STATES OF NEW YORK AND WASHINGTON


This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| | |
|---|---|
| Endorsement Number | Inception Date / Expiration Date |
| Endorsement Effective | Policy Number |
| Named Insured | Countersigned By |

(Authorized Representative)

**SCHEDULE**

**Description of Designated Operation(s):**

"Your work" arising out of it or any part of it and included in the "products-completed operations hazard" at any site while you, your "employees" or your subcontractors are performing operations on your behalf.

**Specified Location(s):**

STATES OF NEW YORK AND WASHINGTON

The following exclusion is added to paragraph **2.**, Exclusions of **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I - Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of the operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or others.

This exclusion applies in the States of New York and Washington regardless of where such operations are conducted by you or on your behalf.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".


© Insurance Services Office, Inc., 2012

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".


© Insurance Services Office, Inc., 2012

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".


© Insurance Services Office, Inc., 2012

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

 © Insurance Services Office, Inc., 2012 

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or


© Insurance Services Office, Inc., 2012

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".


© Insurance Services Office, Inc., 2012

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

 © Insurance Services Office, Inc., 2012 

## COVERAGE C – MEDICAL PAYMENTS

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.


© Insurance Services Office, Inc., 2012

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

 © Insurance Services Office, Inc., 2012 

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C**;

b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B**.

 © Insurance Services Office, Inc., 2012 

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal And Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

 © Insurance Services Office, Inc., 2012 

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

 © Insurance Services Office, Inc., 2012 

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

 © Insurance Services Office, Inc., 2012 

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

 © Insurance Services Office, Inc., 2012 

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

 © Insurance Services Office, Inc., 2012 

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

**(2)** The providing of or failure to provide warnings or instructions.


© Insurance Services Office, Inc., 2012

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

CG 03 00 01 96

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| Endorsement effective<br>09/11/2013 12:01 A.M. standard time | Policy No.<br>CIP191238 |
| Named Insured | Countersigned by |

(Authorized Representative)

**SCHEDULE**

| Coverage | Amount and Basis of Deductible PER CLAIM | or | PER OCCURRENCE |
|---|---|---|---|
| Bodily Injury Liability | $ N/A | | $ N/A |
| OR | | | |
| Property Damage Liability | $ N/A | | $ N/A |
| OR | | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ [redacted] | | $ N/A |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage," however caused):

**A.** Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

**B.** You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:
   a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";
   b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or
   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:
      **(1)** "Bodily injury";
      **(2)** "Property damage"; or
      **(3)** "Bodily injury" and "property damage" combined


Copyright, Insurance Services Office, Inc., 1994

as the result of any one "occurrence."

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury," a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage," person includes an organization.

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:
   a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";
   b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or
   c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:
      (1) "Bodily injury";
      (2) "Property damage"; or
      (3) "Bodily injury" and "property damage" combined

   as the result of any one "occurrence," regardless of the number of persons or organizations who sustain damages because of that "occurrence."

C. The terms of this insurance, including those with respect to:
   1. Our right and duty to defend the insured against any "suits" seeking those damages; and
   2. Your duties in the event of an "occurrence," claim, or "suit"

   apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.


Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

**a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**b.** Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

 © Insurance Services Office, Inc., 2012 

2. "Bodily injury" or "property damage" occurring after:

   a. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   b. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement you have entered into with the additional insured; or

2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: CIP191238

COMMERCIAL GENERAL LIABILITY
CG 20 37 04 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED BY WRITTEN CONTRACT TO PERFORM SERVICES WITHIN THE TERMS AND CONDITIONS OF THIS POLICY TO WHICH THIS FORM IS ATTACHED. | LOCATIONS AS REQUIRED BY WRITTEN CONTRACT. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.


© Insurance Services Office, Inc., 2012

POLICY NUMBER: CIP191238

COMMERCIAL GENERAL LIABILITY
CG 21 54 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description and Location of Operation(s):**

ALL LOCATIONS WHERE YOU PERFORM OR HAVE PERFORMED WORK THAT IS OR WAS TO BE INSURED UNDER A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM AS DESCRIBED BELOW.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

**(1)** Provides coverage identical to that provided by this Coverage Part;

**(2)** Has limits adequate to cover all claims; or

**(3)** Remains in effect.

 Copyright, Insurance Services Office, Inc., 1994 

o

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003  o

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

1. For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of [redacted] in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   b. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

 © ISO Properties, Inc., 2007  o

POLICY NUMBER: CIP191238

COMMERCIAL GENERAL LIABILITY
CG 24 04 05 09

# WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| |
|---|
| **Name Of Person Or Organization:**<br>ANY PERSON OR ORGANIZATION WITH WHOM THE INSURED HAS AGREED TO WAIVE RIGHTS OF RECOVERY, PROVIDED SUCH AGREEMENT IS MADE IN WRITING AND PRIOR TO THE LOSS. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

The following is added to Paragraph **8. Transfer Of Rights Of Recovery Against Others To Us** of **Section IV – Conditions:**

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.


© Insurance Services Office, Inc., 2008

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The definition of "insured contract" in the **Definitions** section is replaced by the following:

"Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © Insurance Services Office, Inc., 2012 

POLICY NUMBER: CIP191238

COMMERCIAL GENERAL LIABILITY
CG 25 03 05 09

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED CONSTRUCTION PROJECT(S) GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Designated Construction Project(s):** |
| --- |
| ALL PROJECTS AWAY FROM PREMISES OWNED OR RENTED BY YOU. |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A**, and for all medical expenses caused by accidents under Section **I** – Coverage **C**, which can be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

**1.** A separate Designated Construction Project General Aggregate Limit applies to each designated construction project, and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

**2.** The Designated Construction Project General Aggregate Limit is the most we will pay for the sum of all damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage **C** regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**3.** Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the Designated Construction Project General Aggregate Limit for that designated construction project. Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Construction Project General Aggregate Limit for any other designated construction project shown in the Schedule above.

**4.** The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Construction Project General Aggregate Limit.


© Insurance Services Office, Inc., 2008

**B.** For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section **I** – Coverage **A**, and for all medical expenses caused by accidents under Section **I** – Coverage **C**, which cannot be attributed only to ongoing operations at a single designated construction project shown in the Schedule above:

1. Any payments made under Coverage **A** for damages or under Coverage **C** for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and
2. Such payments shall not reduce any Designated Construction Project General Aggregate Limit.

**C.** When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Construction Project General Aggregate Limit.

**D.** If the applicable designated construction project has been abandoned, delayed, or abandoned and then restarted, or if the authorized contracting parties deviate from plans, blueprints, designs, specifications or timetables, the project will still be deemed to be the same construction project.

**E.** The provisions of Section **III** – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.


© Insurance Services Office, Inc., 2008

# ATAIN SPECIALTY INSURANCE COMPANY

## NOTICE - PREMIUM REFUNDS

In response to California Assembly Bill 24 04, this notice is being provided to make you aware that you may incur a penalty if you cancel your policy prior to the expiration date.

If you cancel the policy prior to the expiration date, the penalty is 10% of any remaining unearned premium, subject to any minimum earned premium endorsement that may be attached to your policy or the policy for which you are applying.

This notice is for information purposes only and does not become a part or condition of the policy.

NOTICE:

1. THE INSURANCE POLICY THAT YOU [HAVE PURCHASED] [ARE APPLYING TO PURCHASE] IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.

2. THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.

3. THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.

4. THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.

5. FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

6. FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S

INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7. CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8. IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.